Stephen **TORNAY**, Galene Tornay, Plaintiffs–Appellants,

v.

**UNITED STATES** of America; A.R. Demeter, Special Agent, Internal Revenue Service, Defendants–Appellees.

No. 86–4432.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1988.

Decided Feb. 22, 1988.

Robert J. Wayne, Seattle, Wash., for plaintiffs-appellants.

Michael L. Paup, Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before WRIGHT, Circuit Judge, ALARCON and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

We must decide if an IRS summons to an attorney for information regarding fees paid by his clients is protected by the attorney-client privilege, or violates the Sixth Amendment right to counsel or the Fifth Amendment right to due process.

## BACKGROUND

Stephen and Galene Tornay were the subject of an investigation by the Internal Revenue Service to determine their federal tax liability for tax years 1978 through 1983. The IRS sought to establish tax liability on a net worth, net expenditure basis. It issued summonses to three Oregon attorneys, whom the Tornays had retained in connection with a 1983 criminal conviction, for information regarding fees paid. When the attorneys complied with the summonses, the Tornays discharged them.

The Tornays also retained Seattle attorney Robert Wayne, their present counsel. In 1984, the IRS issued a summons to Wayne for records of financial transactions with the Tornays for the years 1977 through 1984. The IRS withdrew the summons after the Tornays filed a petition to quash.

Later, the IRS issued a second summons to Wayne requesting only the financial records for 1983. The summons complied with the notice and procedure required by 26 U.S.C. § 7609(a).

Wayne failed to comply with the summons and continues to do so. The Tornays petitioned to quash pursuant to 26 U.S.C. § 7609(b)(2). In response, the IRS sought enforcement to the extent that the summons "sought information concerning the date, amount and form of legal fees paid to and trust funds deposited with Wayne by the Tornays during 1983." The Tornays insist that they will discharge Wayne if he is forced to comply with the summons.

After an evidentiary hearing, Magistrate Sweigert issued recommended findings of fact and conclusions of law. He concluded

that the information was not a confidential communication protected by the attorney-client privilege, and that enforcement of the summons did not violate the Tornays' Sixth Amendment right to counsel. Judge Rothstein adopted the magistrate's findings and conclusions, and denied the petition to quash.

The Tornays appeal, challenging only the conclusions of law. They allege: (1) the attorney-client privilege protects the records sought by the IRS, and (2) enforcement of the summons violates their Sixth Amendment right to counsel and Fifth Amendment right to due process. We affirm.

## DISCUSSION

### I. Attorney–Client Privilege

■ Denial of a petition to quash an IRS summons is reviewed under the clearly erroneous standard. *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.1985). The conclusion that the amount, date, and form of legal fees paid is not a confidential communication protected by the attorney-client privilege is a mixed question of law and fact, and reviewed *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question. *U.S. v. Hirsch*, 803 F.2d 493, 496 (9th Cir.1986).

Federal Rule of Evidence 501 provides: "[T]he privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience." Accordingly, federal common law governs whether the information sought by the IRS is protected by the attorney-client privilege. *United States v.*

*Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977).

The purpose of the attorney-client privilege is to encourage full disclosure to attorneys so they are able to render effective legal assistance. 8 J. Wigmore, *Evidence* §§ 2291–92 (McNaughton rev. 1961). Because "the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly, it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

■ We have said repeatedly, as the Tornays concede, that fee information generally is not privileged.[1] *See, e.g., In re Grand Jury Supoenas (Hirsch)*, 803 F.2d 493, 496 (9th Cir.1986); *In re Osterhoudt*, 722 F.2d 591, 592 (9th Cir.1983). Payment of fees is incidental to the attorney-client relationship, and does not usually involve disclosure of confidential communications arising from the professional relationship. *Hirsch*, 803 F.2d at 496; *Osterhoudt*, 722 F.2d at 593.

■ The Tornays argue that, in light of an exception to this rule, the privilege is applicable to information concerning fees paid to Wayne. The genesis of their argument is *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960).

*Baird* involved several clients who directed their attorney to tender anonymously to the IRS delinquent tax payments and interest. The IRS issued a summons requiring counsel to identify his clients. We concluded that disclosure of the clients' identity was protected by the attorney-client privilege:

"If the identification of the client conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client, then the privilege should ex-

1. Although the IRS sought information regarding fees and trust funds, we do not understand the Tornays to contest the summons to the extent that it requests trust fund information. Furthermore, the Tornays do not contend that

the IRS failed to establish the threshold requirements for enforcement of the summons. *See United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

tend to such identification in the absence of other factors."[2]

*Id.* at 632. The privilege applied because identifying the clients would be tantamount to conveying a privileged communication in which the clients disclosed their delinquent tax liabilities.

Seventeen years after *Baird,* our court cited it for this proposition:

> "A client's identity and the nature of that client's fee arrangements may be privileged where the person invoking the privilege can show that a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought."

*United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977).

The Tornays argue that the fee information sought by the IRS falls within the *Baird* exception. They read *Hodge & Zweig's* statement of *Baird* to mean that disclosure of fee information which may be used to implicate the client is protected by the privilege. They say the fees were paid to represent them in the IRS investigation, fee information will implicate them in that investigation, and the IRS intends to rely upon the information as an essential element in its case.

The government argues that *Baird* has been narrowly construed, and is not applicable here. Amici Curiae Washington State Trial Lawyers Association and Washington State Bar Association suggest that Ninth Circuit authority is split as to the extent and breadth of *Baird.* We agree with the government.

Our court, in several decisions, has cited *Baird* for the proposition enunciated in *Hodge & Zweig. See, e.g., In re Grand Jury Subpoenas Duces Tecum (Lahodny),* 695 F.2d 363, 365 (9th Cir.1982); *United States v. Sherman,* 627 F.2d 189, 191 (9th Cir.1980). We have, however, applied *Baird* only on one other occasion. *See In re Grand Jury Proceedings (Lawson),* 600 F.2d 215 (9th Cir.1979).[3]

In *Lawson,* the court applied *Baird* to protect the identity of an undisclosed client who had arranged to pay the legal fees for two admitted conspirators. With little discussion, the court assumed that the unnamed client sought legal advice regarding possible implication with the conspirators, and concluded that *Baird* was applicable.

Our court's reliance on the *Hodge & Zweig* statement of *Baird* is curious. In *Hodge & Zweig,* the IRS sought information regarding the nature of fees paid by a client. The client was alleged to be part of a conspiracy which paid the legal fees of co-conspirators who were apprehended. The court stated that *Baird* would apply because disclosing the nature of the payments could implicate the client as a co-conspirator. Then it concluded, however, that the information was not privileged because the client sought legal representation in furtherance of the conspiracy. We view *Hodge & Zweig's* statement of *Baird* as dictum, and give it no precedential weight.

Nevertheless, *Lawson* and *Hodge & Zweig* illustrate the narrow scope of *Baird.* In both, the government sought more than information about fees paid. It sought the identity of clients who had allegedly paid legal fees for the defense of alleged conspirators. Information regarding the fee arrangement was not deemed a confidential communication merely because it implicated the unidentified client. The crucial factor was the exceptional circumstances by which disclosure of the fee arrangement would be tantamount to revealing the unnamed clients' involvement in the conspir-

---

**2.** "Such factors are (a) the commencing of litigation on behalf of the client where he voluntarily subjects himself to the jurisdiction of the court; (b) an identification relating to an employment by some third person, not the client nor his agent; (c) an employment of an attorney with respect to *future* criminal or fraudulent transactions; (d) the attorney himself being a defendant in a criminal matter." *Baird,* 279 F.2d at 632.

**3.** In light of our narrow application of *Baird,* we do not believe that citations to and criticism of the *Hodge & Zweig* formulation indicate conflict among our decisions. Moreover, the appropriate forum for resolving intra-circuit conflicts is the limited en banc court. *See* Ninth Cir.R. 12; Fed.R.App.Proc. 35(b).

acy, clearly a privileged confidential communication. *Hodge & Zweig*, 548 F.2d at 1354.

*Hodge & Zweig* has been criticized as misstating the *Baird* rule. *See Hirsch*, 803 F.2d at 497; *In re Osterhoudt*, 722 F.2d at 593; *In re Matters Before the Special March 1980 Grand Jury*, 729 F.2d 489, 494 (7th Cir.1984). "The principle of *Baird* was not that the privilege applied because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney." *Osterhoudt*, 722 F.2d at 593.

A careful reading of *Baird*, and close examination of subsequent cases, indicates that *Baird* applies only when it is shown that, because of exceptional circumstances, disclosure of the client's identity or the existence of a fee arrangement would reveal information that is tantamount to a confidential professional communication.[4] *See Hirsch*, 803 F.2d at 498.

Thus, *Baird* and its progeny do not apply here. The Tornays' identity was known to the IRS. The agency sought only the amount, date and form of the payments to Wayne, not information regarding a fee arrangement as in *Lawson* and *Hodge & Zweig*. The Tornays have not demonstrated the existence of exceptional circumstances that would make disclosure tantamount to revealing a confidential communication.

Nor will the Tornays be implicated by the existence of a fee arrangement with Wayne. They will be implicated, if at all, by their expenditures, a portion of which were coincidentally for Wayne's legal services. The information sought by the IRS is not protected by the attorney-client privilege.

Our conclusion is consistent with other decisions involving similar or virtually indistinguishable circumstances. *See In re Osterhoudt*, 722 F.2d 591, 594 (9th Cir. 1983) (subpoena for fee arrangement information); *In re Grand Jury Subpoena Duces Tecum (Lahodny)*, 695 F.2d 363, 365 (9th Cir.1982) (subpoena for fee information); *In re Grand Jury Witness (Salas)*, 695 F.2d 359, 362 (9th Cir.1982) (subpoena for fee information); *United States v. Sherman*, 627 F.2d 189, 192 (9th Cir.1980) (IRS summons for amount of fees); *see also United States v. Haddad*, 527 F.2d 537, 539 (6th Cir.1975), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 797 (1976); *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *U.S. v. Cromer*, 483 F.2d 99 (9th Cir.1973).

The Tornays argue that the privilege must be applied because the IRS summons has interfered with the attorney-client relationship. They say the primary reason for discharging their Oregon attorneys was their compliance with the IRS summonses. They presented two experienced defense lawyers who testified that: (1) a client is less forthcoming if he knows that his attorney might be called as a witness against him, and (2) a subpoena to a lawyer hinders the development of a defense because it distracts the lawyer.

We apply the attorney-client privilege only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client. *See United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977). We are not persuaded that its purpose will be furthered by extending the privilege to information regarding fees paid by a client.

We do not believe that clients, knowing that their attorney may be compelled to testify about the amount, date, and form of fees paid, would be inhibited from disclosing fully information needed for effective legal representation. Nor do we accept a generalization that clients feel less free to disclose once it becomes apparent that their attorney's testimony may cause adverse re-

---

**4.** We reiterate that although the privilege may be applicable, it cannot be used "as a cloak for illegal or fraudulent behavior, [for] it is well established that the privilege does not apply where legal representation was secured in furtherance of intended, or present, continuing illegality." *Hodge & Zweig*, 548 F.2d at 1354.

sults. The Tornays' voluntary discharge of their Oregon attorneys does not show that disclosure of fee information established a barrier to the free flow of information, nor does the possibility that an attorney may be required to expend time and resources to comply with a summons.

Some prospective clients, arguably, may decide not to retain counsel for legal services if they could be implicated by expenditures for those services. This is not, however, a sufficient justification to invoke the privilege. The privilege is not to immunize a client from liability stemming from expenditures for legal services. Its purpose is only to encourage persons who choose to be represented by counsel, despite the consequences of that choice, to confer candidly and openly with their attorney. The district court was correct in ruling that the attorney-client privilege was inapplicable. It did not abuse its discretion by denying the petition to quash.

### II. Constitutional Challenges

■ The district court ruled that enforcement of the summons does not violate the Tornays' Sixth Amendment right to counsel.

Whether enforcement of the summons violates constitutional rights is a question of law, and reviewed de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Its purpose is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." *United States v. Gouveia,* 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984). It is firmly established that the right to counsel attaches *only* at or after the "initiation of adversary judicial proceedings." *Gouveia,* 467 U.S. at 185–89, 104 S.Ct. at 2295–98; *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972); *Strandberg v. City of Helena,* 791 F.2d

744, 747 (9th Cir.1986); *Judd v. Vose,* 813 F.2d 494, 496 (1st Cir.1987).

Here, the magistrate found, and the Tornays concede, that no judicial proceeding had been initiated, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Sixth Amendment jurisprudence requires us to hold that enforcement of the summons does not violate the Tornays' right to counsel.

The Tornays recognize the limited nature of the right to counsel, but argue that the Sixth Amendment proscribes activity which may interfere with their future right to counsel. They say that unless the subpoena is quashed, their attorney will be disqualified on account of his testimony, and they will have lost the ability to have counsel of their choosing and the benefit of continuity of representation.

We do not agree that compelling an attorney to disclose fee information, before adversarial judicial proceedings have been initiated, violates the right to counsel. *Accord United States v. (Under Seal),* 774 F.2d 624, 627 (4th Cir.1985) (grand jury subpoena to attorney for fee information), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1514, 89 L.Ed.2d 913 (1986); *In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238 (2d Cir.1985) (en banc) (subpoena to attorney), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). Mere enforcement of the summons does not implicate Sixth Amendment concerns. The Tornays have not cited, nor does our research disclose, any ethical canon which would require an attorney to withdraw from representing a client merely for complying with an IRS summons.

Their argument presumes that compliance with the summons leads inevitably to testimony against the client which will cause the attorney to be disqualified. The argument is faulty because it presumes too much.

The Tornays' have not been indicted, nor is there any indication that they will be. Their Sixth Amendment right may never attach, and they may never be faced with the "prosecutorial forces of organized society, and immersed in the intricacies of sub-

stantive and procedural criminal law." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972).

Of course, enforcement of the summons does not mean that Mr. Wayne will actually testify. The Tornays overlook the possibility that the government may not use the information, or that the information may be presented without Wayne's testimony, or that his testimony may be inadmissible if it would violate the Tornays' right to counsel. *Doe*, 781 F.2d at 245. Despite the Tornays' assertion to the contrary, it is debatable whether ethical considerations require that a lawyer withdraw or be disqualified merely because of testimony regarding the amount, date, and form of fees paid.[5]

The Tornays have focused their Sixth amendment challenge prematurely on enforcement of the subpoena. We perceive the fundamental question to be whether the right to counsel is violated when an attorney is disqualified on account of testimony compelled by the government at a criminal prosecution. Justiciability limitations prevent us from deciding this question now. *See Doe*, 781 F.2d at 245; *In re January 1976 Grand Jury*, 534 F.2d 719, 729–30 (7th Cir.1976). The proper time to raise their argument is at trial when the basis for a Sixth amendment argument has evolved more fully.[6]

The Tornays and Amici argue that Sixth Amendment rights attach before indictment when the government engages in abusive and pernicious tactics to disqualify defense counsel. We concede the possibility that summonses and subpoenas may be issued to defense counsel for improper purposes. *See Salas*, 695 F.2d at 363; *see, e.g.,* Suni, *Subpoena to Criminal Defense Lawyers: A Proposal for Limits*, 65 Or.L. Rev. 215, 215–24 (1986).

The record before us does not, however, suggest abuse or improper purpose by the IRS. The summonses were one aspect of the IRS's attempt to determine the Tornays' total expenditures. Its persistent efforts were necessary because the Tornays were the only other source of fee information. This is not the appropriate opportunity to consider their argument.

The Tornays and Amici argue that summonses to attorneys should be enforced only when the need of the IRS outweighs the taxpayer's need for continuity of counsel.

Perhaps the Sixth Amendment requires that the government's need for information be balanced against the defendant's right to counsel when a criminal defendant's attorney faces certain disqualification on account of testimony compelled by the government. We are not, however, faced

---

**5.** Here, the magistrate stated that the Tornays had not established that Wayne would be disqualified, even if he should testify. An attorney may testify while representing a client where:

"(1) the testimony relates to an uncontested issue;

(2) The testimony relates to the nature and value of legal services rendered in the case;

(3) disqualification of the lawyer would work a substantial hardship on the client."

Model Rules of Professional Conduct, Rule 3.7; *see* Washington Rules of Professional Conduct, Rule 3.7.

We recognize that the right to counsel of choice is the focus of much attention in light of the Comprehensive Forfeiture Act of 1984, ch. 3, Pub.L. No. 98–473, §§ 301 *et seq.,* 98 Stat. 1976 (codified at 18 U.S.C. § 1963 (Supp.1987); 21 U.S.C. §§ 848, 853 (Supp.1987). *See, e.g., United States v. Harvey*, 814 F.2d 905, 926 (4th Cir. 1987). The forfeiture provisions implicate the Sixth Amendment when a defendant is deprived completely of the ability to employ and pay legitimate attorney fees to private counsel. *Id.*

Those concerns are not present here. The Tornays do not face criminal charges. The IRS seeks information on expenditures made from 1978 through 1983, and funds on deposit. Only attorneys who accepted fees or trust funds during that period would be subject to a summons. Even disqualification of the Oregon attorneys and Wayne would leave the Tornays with a vast selection of capable counsel. This is not a case where a criminal defendant would be deprived completely of retained defense counsel.

**6.** Amicus Curiae National Association of Criminal Defense Lawyers argue that to remedy a potential Sixth Amendment violation at trial is "unsound and inadequate." They presume that dismissal is the only remedy, and that it imposes too high a societal cost. We are not persuaded. If the Sixth Amendment is violated because an attorney will be disqualified on account of testimony compelled by the government, an appropriate remedy may be to bar the attorney's testimony.

with that question today, and are unwilling to impose such a test when the government seeks merely to enforce a summons.[7]

We have refused to burden government investigations with the requirement to show "need" as a prerequisite for enforcing a subpoena. *See In re Grand Jury Proceeding (Schofield),* 721 F.2d 1221 (9th Cir.1983). In *Schofield,* a grand jury subpoena directed an attorney to bring records of financial transactions with his client who was under investigation. The district court refused to enforce the subpoena to the extent that it sought information on fees and expenses until the government made a preliminary showing of need and relevance. We ruled that this showing was not necessary because it "would not advance the administration of justice." *Id.* at 1223; *accord Doe,* 781 F.2d at 243–44 (refusing to require the government to demonstrate need for fee information to enforce subpoena); *In re Klein,* 776 F.2d 628, 633 (7th Cir.1985) (rejecting "need" requirement before calling attorney before grand jury); *In re Grand Jury Proceedings (Weiner),* 754 F.2d 154, 156 (6th Cir.1985) (same); *In re Grand Jury Proceedings (Freeman),* 708 F.2d 1571, 1575 (11th Cir.1983) (same). *But see United States v. Klubock,* 832 F.2d 649 (1st Cir.1987).

Our decision in *Schofield,* and the status of IRS summonses persuade us that it would be inappropriate to adopt the balancing test suggested. Summonses are enforced only after the government has established the threshold requirements of *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).[8] Furthermore, Congress has vested the IRS with broad investigative powers to enforce the tax laws. 26 U.S.C. § 7601 (1982). This includes issuing summonses for any material that is relevant to an investigation. *Id.* § 7602(a). We are not prepared to inter-fere with the investigative powers granted to the IRS absent infringement of a constitutionally protected right. Our primary role in enforcing summonses is to guard against the abuse of summons power. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255, *United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975). Here, there is no abuse of that power.[9]

■ The Tornays argue that enforcement of the subpoena violates the Due Process clause of the Fifth Amendment. It is uncertain whether, and if so to what extent, the due process clause expands the constitutional protections of the Sixth Amendment right to counsel. *Compare Dillon v. United States,* 307 F.2d 445, 446–47 (9th Cir.1962) ("[T]he appointment of counsel may sometimes be mandatory even in those areas in which the Sixth Amendment does not apply.") *with In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 246 (2d Cir.1985) (en banc) ("[D]ue process clauses neither expand nor contract the constitutional protection provided by the Sixth Amendment right to counsel."), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). We need not resolve this uncertainty.

The fairness concerns of due process are not implicated here. We have said: "Merely requiring a defendant's lawyer to testify does not alone constitute a material interference with his function as an advocate or operate to deprive the accused of a fair trial." *United States v. Freeman,* 519 F.2d 67, 68 (9th Cir.1975). Further, merely requiring an attorney to supply unprivileged information for a government investigation does not offend our notions of fundamental fairness and justice. *See also In re January 1976 Grand Jury,* 534 F.2d 719, 730 (7th Cir.1976). Enforcement does not violate the Tornays' right to due process.

---

7. We do not read *Salas,* 695 F.2d at 363, as endorsing the type of balancing suggested here. Moreover, if balancing were appropriate, it should be conducted at trial once disqualification is inevitable. *Doe,* 781 F.2d at 243.

8. *Powell* requires that the IRS show: 1) the ivestigation is being conducted for a legitimate purpose; 2) the information is relevant to the investigation; 3) the information is not already in the IRS's possession; and 4) administrative steps required by the Internal Revenue code have been followed. 379 U.S. at 57–58, 85 S.Ct. at 255.

9. The magistrate found that the IRS had established "a special need because it is clear that the information sought is not available from any other source with the exception of the petitioners themselves."

## CONCLUSION

The information sought by the IRS is not protected by the attorney-client privilege. Enforcement of the summons does not violate the Sixth Amendment right to counsel because that right has not attached. Enforcement will not result in deprivation of due process. The district court was correct in denying the petition to quash. The judgment is AFFIRMED.