990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Lynn MONTGOMERY, Defendant-Appellant.
 Nos. 91-10189, 91-10190.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1992.
Decided March 15, 1993.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daniel Lynn Montgomery appeals his conviction, following a bench trial, for conspiracy, attempt to manufacture, and manufacture of methamphetamine; possession of methamphetamine with intent to distribute; maintaining a place to manufacture methamphetamine; possession of chemicals with intent to manufacture methamphetamine; and possession of an unregistered firearm. Montgomery contends that the district court erred by concluding that a codefendant's statement to an assistant public defender in Montgomery's presence was protected by attorney-client privilege and by refusing to allow Montgomery to cross-examine the codefendant, who was a government witness, as to the nature of the statement. Because the district court properly excluded the statement on privilege grounds, we affirm Montgomery's conviction.
 
 I. BACKGROUND
 
 3
 On March 5, 1990, officers executed a search warrant for Paula McMeniman's mobile home. Montgomery was in the home at the time of the search, and McMeniman arrived after the search began. The officers found glassware and chemicals used in the manufacture of methamphetamine. In Montgomery's bedroom, they found drug-related material and a short-barreled rifle.
 
 
 4
 Following their arrest but before their initial appearance before Magistrate Judge Joan Brennan, Montgomery and McMeniman met with Assistant Federal Public Defender Robert Nelson. Nelson discussed the defendants' lack of funds and explained how to fill out the financial affidavits to obtain a public defender. He stated that if both qualified for a public defender, he would only be able represent one of them.
 
 
 5
 The meeting took place in the Magistrate's courtroom. The two defendants sat in the prisoner area within inches of each other. During the conversation, McMeniman made a statement that exculpated Montgomery. The exact nature of this statement is unknown, but the government concedes that it was exculpatory. McMeniman's statement was heard by Nelson and Montgomery.
 
 
 6
 Nelson decided to represent Montgomery. The court appointed private counsel for McMeniman.
 
 
 7
 On March 16, 1990, Montgomery and McMeniman were charged under a single indictment with: (1) conspiracy to manufacture methamphetamine, in violation of 21 U.S.C. § 846; (2) attempt to manufacture methamphetamine, in violation of 21 U.S.C. § 846; (3) manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (4) possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); (5) maintaining a place to use and manufacture methamphetamine, in violation of 21 U.S.C. § 856; and (6) possession of chemicals with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(d).
 
 
 8
 A pre-trial hearing took place on May 24, 1990. Because Nelson was a potential witness for Montgomery, the court removed Nelson, at his request, and appointed another public defender. The new attorney asserted that McMeniman's statement to Nelson was not subject to attorney-client privilege. The court set a hearing for the next day on the privilege issue.
 
 
 9
 At the hearing, Montgomery agreed that the statements made to McMeniman as to the financial affidavit were privileged, but argued that the exculpatory statement was not privileged because it was not made for representational purposes. Moreover, Montgomery claimed that because he was present, the conversation was not confidential. The judge disagreed and ruled that the conversation was privileged, stating:
 
 
 10
 I think that legally the situation is that when you do have multiple defendants or multiple representations, as a potential, you are talking to both of them. That you have created the same kind of attorney-client relationship as to both of them at that point and that if there are communications that have to go to the case itself, even other than the financial communications, I think that there is still a communication that is within a privilege of confidence and that does not destroy the attorney-client relationship. I frankly think that there is an attorney-client relationship here and I don't think that there was a communication that was made not in confidence.
 
 
 11
 In light of its decision, the court appointed a private attorney to represent Montgomery instead of the public defender.
 
 
 12
 On September 26, 1990, Montgomery was charged with possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). This charge was joined with the others for trial.
 
 
 13
 Montgomery's bench trial took place from December 13-18, 1990. As a government witness, McMeniman testified against Montgomery. On cross-examination, McMeniman was asked about her earlier statement to Nelson. Her attorney objected on the grounds of attorney-client privilege. Montgomery's counsel argued that the privilege did not apply because the statement was not confidential and that the improper assertion of the privilege violated Montgomery's constitutional rights. The court did not find Montgomery's argument convincing and sustained the attorney-client privilege. McMeniman then was asked if she would waive her privilege; she refused.
 
 
 14
 Montgomery was convicted on all counts and was sentenced to concurrent sentences as follows: Counts 1-4 to 121 months in prison and five years supervised released; Count 5 to 121 months in prison and three years supervised release, and Count 6 to 120 months in prison and three years supervised release.
 
 
 15
 Judgment was entered on April 4, 1991. Montgomery filed a timely notice of appeal on April 8, 1991, and we have jurisdiction over the appeal under 28 U.S.C. § 1291.
 
 
 16
 II. ATTORNEY-CLIENT PRIVILEGE.
 
 
 17
 Whether codefendant McMeniman's statement is protected by the attorney-client privilege is a mixed question of law and fact that we review de novo. Tornay v. United States, 840 F.2d 1424, 1426 (9th Cir.1988). The party asserting the attorney-client privilege has the burden of demonstrating the privilege applies to the information in question. Id. at 1426; United States v. Gann, 732 F.2d 714, 723 (9th Cir.), cert. denied, 469 U.S. 1034 (1984).
 
 
 18
 Montgomery argues that McMeniman's statement exculpated him of the charges and that the district court's ruling was error. He maintains that there was no privilege because the statement was made neither in confidence nor for purposes of a joint defense, and because the privilege cannot protect perjury. We hold that since McMeniman's statement falls within the joint-interest exception and the perjury argument is inapplicable, there was no error in concluding the statement was protected.
 
 
 19
 Fed.R.Evid. 501 provides that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Federal common law, therefore, governs whether McMeniman's statement falls within the attorney-client privilege. Tornay, 840 F.2d at 1426; Matter of Fischel, 557 F.2d 209, 211 (9th Cir.1977).
 
 
 20
 This court has held that the essential elements of the attorney-client privilege are as follows: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, 6) are at the client's instance permanently protected (7) from disclosure by himself or by legal adviser (8) unless the protection is waived. Fischel, 557 F.2d at 211 (citing 8 John Henry Wigmore, Wigmore on Evidence § 2295 at 554 (McNaughton rev. 1961)); see also United States v. Flores, 628 F.2d 521, 526 (9th Cir.1980). In this case, the relevant issues are whether McMeniman sought legal advice from Nelson and whether her statement was given in confidence.
 
 
 21
 A. Whether McMeniman Sought Legal Advice.
 
 
 22
 When deciding what constitutes seeking legal advice from an attorney, we examine whether the potential client reasonably believes that he is consulting an attorney as an attorney and manifests an intention to seek professional legal advice, although actual employment does not result. See United States v. Layton, 855 F.2d 1388, 1406 (9th Cir.1988) (privilege applies only if party sought to become a client), cert. denied, 489 U.S. 1046 (1989); Olender v. United States, 210 F.2d 795, 805 (9th Cir.1954) (privilege is limited to communications made in the course of seeking legal, not business, advice from a professional legal adviser in his capacity as such); see also Kearns v. Fred Lavery Porsche Audi, 745 F.2d 600, 603 (Fed.Cir.1984), cert. denied, 469 U.S. 1192 (1985); Westinghouse Elec. Corp. v. Kerr, 580 F.2d 1311, 1319 (7th Cir.), cert. denied, 439 U.S. 955 (1978). The deciding factor is what the prospective client, not the lawyer, thought. Raymond L. Wise, Legal Ethics (1970) 284; see Layton, 855 F.2d at 1406.
 
 
 23
 McMeniman met Nelson in the Magistrate's courtroom just before her initial appearance. Nelson told McMeniman that he would help her and Montgomery determine if they qualified for a public defender and assist with the completion of the necessary financial affidavits. Nelson explained that he would not be able to represent both McMeniman and Montgomery. Nelson later chose to represent Montgomery, not McMeniman. Given these facts, the district court reasonably concluded that McMeniman sought legal advice from Nelson because he was an attorney, wanted his help in obtaining counsel, and discussed with him the charges for which she required representation.
 
 
 24
 B. Whether McMeniman's Statement was Made in Confidence.
 
 
 25
 Generally, if a third party is present at the time a would-be client speaks to his attorney, the conversation is not confidential and the attorney-client privilege does not apply. United States v. Gann, 732 F.2d 714, 723 (9th Cir.), cert. denied, 469 U.S. 1034 (1984); United States v. Blackburn, 446 F.2d 1089, 1091 (5th Cir.1971), cert. denied, 404 U.S. 1017 (1972). At the time McMeniman made her statement to Nelson, Montgomery was seated within inches of her and heard the conversation.[1]
 
 
 26
 This court has recognized an exception to the confidentiality requirement of the attorney-client privilege for statements made by a defendant to his attorney in the presence of a codefendant who shares a common interest. See, e.g., Continental Oil Co. v. United States, 330 F.2d 347, 350 (9th Cir.1964) (holding that attorney-client privilege applied to oil companies' employees' statements about their grand jury testimony shared among their attorneys). We have not limited this common-interest exception to situations where codefendants share a common defense or have interests that are not adverse. See e.g., Hunydee v. United States, 355 F.2d 183 (9th Cir.1965).
 
 
 27
 In Hunydee, 355 F.2d at 185, for example, this court held that the attorney-client privilege applied to a defendant's statements because they concerned a matter of common concern, although he and his codefendant generally had adverse interests and the meeting was not for purposes of a common defense. There, a husband and wife were indicted under a single indictment for income tax evasion. Id. at 184. They retained separate counsel because of possible conflict of interest. At a pre-indictment meeting attended by the codefendants and their respective attorneys, the husband stated that he would plead guilty and take the blame. Id. At trial, wife and her attorney testified as to the husband's comments. Id. The husband objected on attorney-client privilege grounds. Id. The trial court ruled that the conversation was not privileged as it was neither between a client and his attorney nor confidential in character. Id. This court disagreed. Id. at 185.
 
 
 28
 According to this court, whether the meeting was called to prepare a trial strategy or defense was not dispositive; it was the nature of the statements that controlled. Id. This court ruled that "where two or more persons who are subject to possible indictment in connection with the same transaction make confidential statements to their attorneys, these statements, even though they are exchanged between attorneys, should be privileged to the extent they concern common issues and are intended to facilitate representation in possible subsequent proceedings." Id. The statements were privileged because they "apprised the respective attorneys of [defendant's] position at the time and influenced the course of their representation." Id.
 
 
 29
 Hunydee is apposite. In that case, as here, the parties were codefendants charged under a single indictment. The husband and wife in Hunydee, as with Montgomery and McMeniman here, generally had adverse interests and were seeking separate counsel. In both cases, the meeting was for a general purpose, rather than to plan a joint defense or strategy. Finally, the nature of the statements in both cases concerned a matter of common interest and facilitated codefendants' representation. In Hunydee, the husband's statement of guilt affected both codefendants and their approach to the case. Here, McMeniman's statement exculpating Montgomery affected the codefendants' positions and was a matter of common interest. Given the similarities, we conclude that McMeniman's statement falls within the common-interest exception to the confidentiality requirement.
 
 
 30
 C. Privilege Cannot be Used to Protect Perjury.
 
 
 31
 Montgomery argues that McMeniman cannot use attorney-client privilege to protect perjury. He claims that (1) McMeniman's testimony was perjured, (2) Nelson knew it was perjured because he was privy to her earlier statement, and (3) McMeniman could be forced to reveal her earlier statement to Nelson as it was no longer privileged, and if she refused, Nelson had an affirmative duty to testify as to the statement.
 
 
 32
 As Montgomery failed to raise this argument at trial, the district court made no finding as to the issue. This court will review an issue not raised in district court only if necessary to prevent manifest injustice and the proponent shows exceptional circumstances why the issue was not raised below. International Union of Bricklayers & Allied Craftsman Local 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985). As Montgomery failed to raise the perjury argument after McMeniman's testimony and to show any exceptional circumstances why the argument was not raised, we conclude that Montgomery waived the perjury argument.
 
 
 33
 Even if we were to assume that Montgomery did not waive the issue, however, there is nothing in the record showing that McMeniman committed perjury or was false. Furthermore, there is no showing that either McMeniman's attorney at trial or the government's attorney was privy to her earlier statement to Nelson or that Nelson had any knowledge that McMeniman was committing perjury, if indeed she was. Thus, Montgomery's perjury argument is meritless.
 
 
 34
 III. SIXTH AMENDMENT'S CONFRONTATION CLAUSE.
 
 
 35
 Whether a limitation on cross-examination violates the Confrontation Clause is a question of law that is reviewed de novo. United States v. Vargas, 933 F.2d 701, 704 (9th Cir.1991). A violation of the Confrontation Clause, including a violation of the defendant's right to cross-examine and impeach a witness, is subject to harmless error analysis. Id.; accord Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).
 
 
 36
 Montgomery argues that the district court erred by allowing McMeniman to use the attorney-client privilege to bar questions on cross-examination and that this error violated his rights under the Sixth Amendment's Confrontation Clause by preventing effective cross-examination. We hold that the district court did not err in applying the attorney-client privilege in this instance.[2]
 
 
 37
 IV. CONCLUSION.
 
 
 38
 As the district court correctly concluded the attorney-client privilege applied and the Confrontation Clause was not violated, we affirm Montgomery's conviction.
 
 
 39
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 A United States marshal, a DEA agent, and a United States attorney also were present at the time McMeniman made the statement. There is no indication in the record that they overheard the conversation
 
 
 [2]
 In his brief, Montgomery argued that the district court's error in permitting the assertion of attorney-client privilege violated his Confrontation Clause rights. Neither party addressed whether the Confrontation Clause might be violated when a witness legitimately refuses to answer on privilege grounds, thereby preventing the defendant from extracting testimony showing a witness's bias. See Davis v. Alaska, 415 U.S. 308, 319-20 (1974) (holding that a statutorily created evidentiary privilege could not be asserted to prevent the introduction of evidence that tended to show bias on the part of the government's key witness but limiting holding to facts of case). As neither party addressed this issue, we decline to reach it in our decision