UNITED STATES of America, Plaintiff–Appellee,

v.

Raymond M. GRAY, Defendant–Appellant.

No. 88–3159.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1989.

Decided June 5, 1989.

---

William J. Genego, University of Southern California Law Center, Los Angeles, Cal., for defendant-appellant.

Thomas C. Wales and Robert H. Westinghouse, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Before ALARCON and THOMPSON, Circuit Judges, and TASHIMA,* District Judge.

* Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

ALARCON, Circuit Judge:

Raymond M. Gray (Gray) appeals from the judgment entered following his conviction for failure to appear for sentencing. 18 U.S.C. §§ 3146(a) and (b)(1988 Supp.). Gray seeks reversal on the following grounds:

(1) The reassignment of his case violated local rules governing assignment of cases and denied him due process;

(2) The district court should not have allowed his former attorney to testify that he informed Gray of the date of his sentencing hearing;

(3) Rebuttal arguments made by the Assistant United States Attorney were improper because they were not based upon facts adduced at trial, exceeded the allowable scope of rebuttal, and improperly called attention to the fact that Gray did not testify.

Alternatively, Gray seeks resentencing on the following grounds:

(1) He should have been sentenced under the Sentencing Guidelines;

(2) His sentence was improper because it was based on erroneous information.

We affirm the conviction, but remand for resentencing under the Sentencing Guidelines.

## I

## BACKGROUND

In July 1986, Gray was indicted for conspiracy to commit a series of bank fraud offenses connected to his activities as Chairman of the Board of Directors of Home Savings and Loan Association, Seattle, Washington. On August 7, 1986, Gray executed an appearance bond and was released on his own recognizance. The appearance bond stipulated that Gray was required to be present for trial and at all other hearings. The trial began in the first week of March, 1987, and lasted approximately three months. At the conclusion of the taking of evidence, Gray signed a handwritten waiver of appearance statement prepared by his attorney, Kent Robinson (Robinson), and executed on May 28, 1987. The waiver stated: "I, Raymond M. Gray, do hereby waive my presence at subsequent proceedings in this matter, specifically the return of the verdict."

On June 3, 1987, Gray was convicted on all counts of the indictment in which he was named. Sentencing was eventually set for September 25, 1987. Gray failed to appear, and a one-count indictment was returned, charging Gray with failure to appear in violation of 18 U.S.C. §§ 3146(a) and (b). A warrant was issued for his arrest.

On December 8, 1987, Enrique Perez (Perez), a Deputy United States Marshal, was informed by the Mexican Federal Judicial Police that Gray was being detained at the Tijuana International Airport, in Tijuana, Mexico. Perez met the Mexican authorities at the point of entry at San Ysidro, California, where he took custody of Gray. Gray was arrested on December 8, 1987 and escorted to Seattle for prosecution.

The case against Gray for failure to appear was initially assigned to United States District Judge John C. Coughenour. On February 4, 1988, the case was reassigned by Judge Coughenour, without apparent notice or explanation, to Chief Judge Barbara J. Rothstein. On March 18, 1988, the case was again reassigned, without notice or explanation, to Judge Jack E. Tanner.

Gray filed a motion on March 29, 1988, requesting that his case be reassigned back to Judge Coughenour, or alternatively, that his case be returned to the clerk for reassignment in accordance with local rules. After a brief hearing, the district court denied the motion.

Gray proceeded to trial on April 4, 1988. Robinson and Perez were the only witnesses. Gray did not testify. Robinson testified that, during the week preceding September 25, 1987, he informed Gray of the September 25th sentencing date and reminded Gray that his appearance was required. Robinson also testified that on September 24th he informed Gray of his obligation to appear in court the next day.

Gray was convicted for failure to appear. On June 24, 1988, Gray was sentenced to the maximum term of imprisonment (5 years) and the maximum fine ($250,000). The court ordered Gray to serve his 5–year sentence consecutive to his 15–year sentence for bank fraud. Gray appeals.

## II

## DISCUSSION

### A. *Reassignments of the Case*

■ Gray alleges that he was denied due process because his case was reassigned in violation of a Local Rule, W.D.Wash.General Rule Eight. General Rule Eight provides that: "All actions, causes, and proceedings, civil and criminal, shall be assigned by the clerk to the respective judges of the court." (Local Rules W.D.Wash. General Rule Eight). Gray concedes that the initial assignment of his case to Judge Coughenour conformed to General Rule Eight, but he contends that each subsequent reassignment of his case violated General Rule Eight. We do not review independently a district court's determination of the scope and application of local rules and general orders because we give district courts broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders. *United States v. DeLuca,* 692 F.2d 1277, 1281 (9th Cir.1982); *United States v. Torbert,* 496 F.2d 154, 157 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed. 2d 91 (1974); *cf. United States v. Freitas,* 800 F.2d 1451, 1454 (9th Cir.1986) (interpretation of the Federal Rules is reviewed de novo).

General Rule Eight does not expressly address reassignments of cases. The government contends that reassignments "are simply not covered by the rule." Gray responds by suggesting that "the Rule, by its own language, covers all assignment of cases. The Rule is not limited, as the government would hope, to initial assignment of cases." A practical interpretation suggests that reassignments should be included in its scope. The government argues, however, that the reassignments were authorized by a General Order of the district court regarding division of court business.

■ Gray contends that the first reassignment from Judge Coughenour to Chief Judge Rothstein on February 4, 1988, was improper because only the Chief Judge is granted authority to transfer cases to other judges pursuant to paragraph 14 of the district court's General Order. Paragraph 14 of the General Order provides:

14. The assignment of all civil and criminal cases as above noted is made subject to such change or changes as may be established by the Chief Judge for purposes of equalization of case assignments to all active Judges of the district.

General Order (In the matter of Division of Court Business) (W.D.Wash. March 10, 1988). Gray, however, never objected to the transfer of the case to Chief Judge Rothstein until after the case was reassigned a second time on March 18, 1988, to Judge Tanner. Chief Judge Rothstein had the case for over a month without objection from Gray. Under these circumstances Gray has waived his challenge to the first reassignment of his case to Chief Judge Rothstein. *Cf. United States v. Berberian,* 851 F.2d 236, 240–41 (9th Cir.1988) (defendant who objected to reassignment of his case to a particular judge, but failed to ask that the case be randomly assigned in conformity with a General Order did not preserve the issue for appeal), *cert. denied,* —— U.S. ——, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989).

■ Gray also contends that the second reassignment of his case from Chief Judge Rothstein to Judge Tanner was improper because Chief Judge Rothstein did not indicate that she was exercising her authority under paragraph 14 of the General Order, nor did she indicate that she was doing so "for purposes of equalization of case assignments to all active Judges of the district." General Order (In the Matter of Division of Court Business) (W.D.Wash. March 10, 1988).

Gray cites no authority for the proposition that paragraph 14 of the General Order only authorizes system-wide changes in

the assignment process. The plain language of Paragraph 14 contradicts this interpretation. It succinctly and expressly authorizes "such change or changes" which the Chief Judge establishes. General Order (In the Matter of Division of Court Business) (W.D.Wash. March 10, 1988). The scope of paragraph 14 of the General Order is simply not limited by the restrictive language which Gray has interposed.

Moreover, contrary to Gray's contention, the language of paragraph 14 does not require the Chief Judge to indicate an intent to act pursuant to the General Order. The reassignment was not improper simply because Chief Judge Rothstein did not explicitly indicate that she was acting pursuant to the authority and intent of the General Order.

Judges may reassign cases for almost any reason, provided that the assignment is not for an impermissible reason. *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir.1987). Gray does not allege that the reassignment to Judge Tanner was for an impermissible reason. Indeed, Gray informed Judge Tanner that he was "not alleging any particular basis for disqualification" of Judge Tanner, but simply [alleging] a violation of the rule. Under these circumstances we find the reassignment to Judge Tanner permissible and within the scope of paragraph 14 of the General Order. Finding no violation of the local rules or general orders, we do not reach Gray's due-process claim.

B. *Attorney–Client Privilege*

■ Gray alleges that the district court impermissibly allowed his attorney, Robinson, to testify that he informed Gray of his sentencing date. He contends that the information was a confidential communication protected by the attorney-client privilege. The district court's conclusion that communication of a defendant's obligation to appear is not protected by the attorney-client privilege is a mixed question of law and fact which this court reviews independently and without deference to the district court. *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir.1988); *In re Grand Jury Subpoenas (Hirsch)*, 803 F.2d 493,

496 (9th Cir.1986), *modified,* 817 F.2d 64 (1987). "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay,* 840 F.2d at 1426. Moreover, "[w]e apply the attorney-client privilege only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." *Id.* at 1428. The privilege is thus narrowly and strictly construed. *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 24 (9th Cir.1981).

The attorney-client privilege protects confidential information disclosed by a client to an attorney in order to obtain legal assistance. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed. 2d 39 (1976); *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d at 496. We have held that information concerning a defendant's obligation to appear for sentencing is not "of a confidential nature" and therefore, is not protected by the attorney-client privilege. *United States v. Freeman,* 519 F.2d 67, 68 (9th Cir.1975). An attorney's testimony regarding the fact that the client was informed of the hearing date "simply relate[s] to whether [the attorney] advised his client of the court's order to appear." *Id.*

Nonetheless, Gray contends that his "case must be examined on its facts to determine whether any exceptions to the general privilege rules apply and warrant that such information be protected by the privilege." Gray relies upon the "last link doctrine." *In re Grand Jury Subpoena (Bierman),* 765 F.2d 1014, 1018–19 (11th Cir.1985), *vacated in part on reh'g,* 788 F.2d 1511 (1986). Gray alleges that his attorney provided the only evidence of his knowledge that he was required to appear and therefore, the attorney's testimony was privileged under the "last link" doctrine.

The last link doctrine has been defined as "a limited and narrow exception to the general rule, one that obtains when disclosure of the [allegedly privileged information] would supply the last link in an existing chain of incriminating evidence likely to

lead to the client's indictment." *In re Grand Jury Proceedings (Pavlick)* 680 F.2d 1026, 1027 (5th Cir.1982). We enunciated a similar exception in *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). *See also United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977). The narrow exception of *Baird* and its progeny, however, only applies in exceptional circumstances in which disclosure "would reveal information that is tantamount to a confidential professional communication." *Tornay,* 840 F.2d at 1428.

Indeed, the Eleventh Circuit has held that the last-link doctrine does not protect information concerning an obligation to appear. *United States v. Innella,* 821 F.2d 1566, 1567 (11th Cir.1987). The defendant in *Innella* argued that because his attorney's testimony was the only evidence that the government could produce that he "knowingly and willfully" failed to turn himself in as required by 18 U.S.C. § 3150, this evidence was privileged and inadmissible under the "last link" doctrine. The Eleventh Circuit rejected this argument and declined "to extend the last-link exception to this type of situation" stating that the attorney was acting as an officer of the court when he notified his client of the proper date the client was supposed to turn himself in. *Id.*

We also decline to extend the limited exception enunciated in *Baird* to this situation. The district court properly allowed Robinson to testify.

## C. *Closing Argument*

Gray objects to certain statements made by the prosecutor during closing argument. Gray alleges that the statements were not supported by evidence, made reference to his decision not to testify, and were beyond the scope of rebuttal argument. At the close of the rebuttal summation, Gray made a motion for a mistrial. After a hearing, the district court denied the motion.

### 1. *Griffin Error*

Gray contends that the prosecution impermissibly commented upon Gray's deci-

sion not to testify. We review independently and non-deferentially a claim that impermissible rebuttal comments violate the fifth amendment. *United States v. Schuler,* 813 F.2d 978, 980 (9th Cir.1987).

The fifth amendment prohibits the prosecution from commenting upon a defendant's decision not to testify. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). A prosecutorial statement "is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Lincoln v. Sunn,* 807 F.2d 805, 809 (9th Cir.1987). Reversal is compelled only "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction and where there is evidence that could have supported acquittal." *Id.* at 809 (quoting *Anderson v. Nelson,* 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968) (per curiam)). Reversal is warranted if it appears that a prosecutor's comment regarding a defendant's failure to testify may possibly have affected the verdict. *United States v. Pruitt,* 719 F.2d 975, 978 (9th Cir.) (per curiam), *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983).

 In closing argument the prosecution stated in pertinent part the following:

We have the burden of proving beyond a reasonable doubt each of the elements contained in the indictment which has been laid out for you in Judge Tanner's instructions, and that is a burden we welcome. It's a tough burden. That's why I get the chance to talk to you twice. But let me tell you something. Let me tell you what it is not. It is not a burden to prove Raymond Gray guilty of this offense beyond all doubt, beyond all doubt. Judge Tanner has told you, on the other hand, the government is not required to prove guilt beyond all possible doubt.

Now there is a good reason for that, and that is that unless you were Gray, unless you were inside his mind on the night of

the 24th, the day of the 25th, unless you were there inside his mind you would never know beyond all possible doubt what was going on in his mind.

Gray contends that because he "was the only person who could provide information as to what was on his mind," the third paragraph of the preceding soliloquy constituted an impermissible reference to his decision not to testify. In context, it is apparent that the prosecution sought to highlight for the jury the fact that the government was not required to prove guilt beyond all possible doubt. The government was stating the obvious. What A person "intends" or "knows" can never be proved by the government beyond *all* doubt. The prosecutor in this case was simply trying to explain the rationale for his burden of proof, rather than calling attention to Gray's decision not to testify. The government's arguments were not improper.

### 2. *Evidence Not In The Record*

■ Gray also alleges that statements made by the prosecution were impermissible because they were not based upon facts properly adduced at trial. We review a district court's determination that rebuttal statements constitute permissible inferences for an abuse of discretion. *United States v. Patel*, 762 F.2d 784, 794 (9th Cir.1985).

Gray contends that the following statements made during closing argument contain evidence not in the record:

Finally, as if your common sense would not be enough at this point, consider this, consider this: Two and a half months after Raymond Gray failed to appear for his sentencing on the 25th at 1 o'clock, he's arrested. Where is he arrested? He's arrested in Mexico. An arrest warrant. You've heard this. An arrest warrant was outstanding for three months.

Now do you think—common sense again—do you think that the United States Marshal Service could not have found and arrested Mr. Gray for three months if Raymond Gray were not hiding, ultimately hiding in Mexico?

Gray contends that there was no evidence that he was "hiding" in Mexico.

The prosecution is granted reasonable latitude to fashion closing arguments. *Patel*, 762 F.2d at 795. Although it is improper to base closing arguments upon evidence not in the record, *United States v. Artus*, 591 F.2d 526, 528 (9th Cir.1979), prosecutors are free to argue reasonable inferences from the evidence. *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir.1986).

Although no one testified that Gray had been hiding in Mexico, the evidence showed that a warrant for Gray's arrest was outstanding for approximately three months after his sentencing date until he was arrested in Mexico. The inference that Gray was hiding in Mexico was certainly reasonable in light of the evidence presented. The government's closing argument did not contain an impermissible inference.

### 3. *Arguments Beyond The Scope Of Rebuttal*

■ Gray also argues that certain statements by the prosecution exceeded the allowable scope of rebuttal. We review district court determinations regarding the proper scope of rebuttal closing argument for an abuse of discretion. *See United States v. Chavez–Vernaza*, 844 F.2d 1368, 1376 (9th Cir.1987) (district court limitation on the scope of cross-examination is reviewed for an abuse of discretion); *see also Patel*, 762 F.2d at 794. It is "fair advocacy" for the prosecution to advance an argument in rebuttal to which the defendant has opened the door. *United States v. Lopez*, 803 F.2d 969, 972 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987).

■ Gray contends that "by referring to Mr. Gray's arrest in Mexico, the prosecutor exceeded the permissible scope of rebuttal argument since the defense summation made no reference to Mr. Gray's arrest in Mexico." In Gray's closing argument, however, his counsel stated that certain elements of the crime of failing to appear were in dispute. Specifically, he stated that the disputed elements were whether Gray was aware of his sentencing date and his obligation to appear for sentencing, and

whether Gray was willful in his failure to appear. Based on defense counsel's argument, Gray opened the door for the prosecution to argue that Gray's failure to appear was willful because evidence was presented that he was aware of his sentencing date and his obligation to appear and despite this he was in Mexico where he was arrested. Therefore, the statement was well within the proper scope of rebuttal argument.

### D. *Sentencing*

Gray contends that the district court should have sentenced him under the Sentencing Guidelines. The applicability of the Guidelines is a question of law which this court reviews independently, without deference to the district court's interpretation of the law. *See Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1011 (9th Cir.1987) (determinations of the scope of statutory requirements are reviewed *de novo* ). The district court did not sentence Gray under the Sentencing Guidelines based on a previous ruling that the guidelines were unconstitutional.

The Supreme Court upheld the constitutionality of the Sentencing Guidelines in *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Sentencing Guidelines are authorized by the Sentencing Reform Act of 1984. Sentencing Reform Act of 1984, Pub.L. 98–473, 98 Stat. 2031. The effective date of the Act is November 1, 1987. *United States v. Rewald,* 835 F.2d 215, 216 (9th Cir.1987). The Sentencing Guidelines do not apply to conduct that occurred before November 1, 1987. *Id.*

Gray failed to appear for sentencing on September 25, 1987 and was arrested on December 8, 1987. Gray contends that the Sentencing Guidelines are applicable because the offense of failure to appear is a continuing offense which is committed throughout the period in which the defendant remains at large. The Sentencing Guidelines apply to offenses initiated before November 1, 1987, but not completed until after November 1, 1987. *United States v. Frank,* 864 F.2d 992, 1008 (3rd Cir.1988). Therefore, the Sentencing Guidelines are applicable to Gray if the crime of failure to appear is a continuing offense.

A tension exists between the doctrine of continuing offenses and the principle of repose inherent in statutes of limitations. *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). The doctrine of continuing offenses essentially extends the statute of limitations beyond its stated term. Because of this tension, the Supreme Court has established "that the doctrine of continuing offenses should be applied in only limited circumstances." *Id.* The Court, however, went on to explain that:

> These considerations do not mean that a particular offense should never be construed as a continuing one. They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Id.* After analyzing the language of the Universal Military Training and Service Act and the history of draft registration statutes, the Court in *Toussie* concluded that failure to register for the draft was not a continuing offense. *Id.* at 122–23, 90 S.Ct. at 864. To hold that failing to register for the draft was a continuing offense would effectively extend the applicable five-year statute of limitations. *Id.* at 121, 90 S.Ct. at 863. If Congress had intended a longer statute of limitations, it would have so provided. *Id.* at 123, 90 S.Ct. at 864.

The language of 18 U.S.C. § 3146(a) sheds no light as to whether Congress intended to classify failure to appear as a continuing offense. The statute simply states in pertinent part:

> Whoever, having been released under this chapter knowingly—
>
> (1) fails to appear before a court as required by the conditions of release; or
>
> (2) fails to surrender for service of a sentence pursuant to a court order; shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 3146(a) (1988 Supp.). The legislative history of the statute also fails to

indicate whether failure to appear is a continuing offense.

The Supreme Court has determined, however, that escape from federal incarceration "is a continuing offense and that an escapee can be held liable for failure to return to custody as well as for his initial departure." *United States v. Bailey*, 444 U.S. 394, 413, 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980). The Court in *Bailey* pointed out that because of "the continuing threat to society posed by an escaped prisoner," Congress must have intended that the crime of escape be treated as a continuing offense. *Id.* Moreover, the tension between the principle of repose and the doctrine of continuing offenses is absent from the crime of escape because "the statute of limitations is tolled for the period that the escapee remains at large." *Id.* at 413–14, 100 S.Ct. at 636–37.

We conclude that failure to appear is also a continuing offense. The statute of limitations for failure to appear is similarly tolled. 18 U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice.") Moreover, a defendant who fails to appear for sentencing presents a threat to society analogous to that posed by an escaped prisoner. Both are convicted criminals obligated to serve sentences or facing sentencing. In addition, the failure of a defendant to appear for sentencing poses a threat to the integrity and authority of the court.

Our conclusion is supported by our decision in *United States v. Vowiell*, 869 F.2d 1264 (9th Cir.1989). In *Vowiell* we distinguished between the law applicable to escapees and the law applicable to those who assist escapees. We stated:

Assisting escapees after the escape is complete constitutes a separate crime—harboring or concealing escapees. This separation reflects the different dangers which the two crimes pose—namely, helping to breach legal custody and obstructing justice. In contrast, no *separate* crime exists for not turning one's self in after escaping. As the Supreme Court pointed out in *Bailey*, an escapee can be held liable for not returning to custody, 444 U.S. at 413, [100 S.Ct. at

636,] but that conduct is included within the crime of *escape*. Not turning one's self in involves essentially the same danger as escaping—that someone who is supposed to be in legal custody will not fulfill the purpose of that custody.

869 F.2d at 1269 (emphasis in original) (footnote omitted). Similarly, no separate crime exists for failure to return for sentencing after having initially failed to appear for sentencing. The two actions pose the same danger to society and the legal system. Both are part and parcel of one continuing offense.

Because we conclude that failure to appear is a continuing offense and Gray must be resentenced under the Sentencing Guidelines, we need not address Gray's claim that the district court based its sentence upon erroneous information.

### III

### CONCLUSION

The judgment of conviction is AFFIRMED. This case is REMANDED to the district court with instructions that Gray be resentenced pursuant to the Sentencing Guidelines.