949 F.2d 400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willard R. WALLS, Jr., Defendant-Appellant.
 No. 90-50412.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 11, 1991.
Decided Dec. 10, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Willard R. Walls, Jr. appeals his convictions for securities fraud, mail fraud and interstate transportation of stolen money. Walls, a former broker with Merrill Lynch, was indicted for his activities in connection with the account of his client, Everett Reiten. Following a jury verdict finding him guilty on all counts, Walls moved for a judgment of acquittal, and the district judge denied the motion. Walls appeals that ruling, as well as numerous evidentiary and procedural rulings made during the trial. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we affirm.
 
 I. SUFFICIENCY OF THE EVIDENCE
 
 3
 Walls argues that there was insufficient evidence to support his convictions for securities fraud, mail fraud and interstate transportation of stolen money. This Court reviews such claims to determine " 'whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Litteral, 910 F.2d 547, 550 (9th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).
 
 
 4
 A. Sufficiency of the Evidence--Securities Fraud
 
 
 5
 Walls was convicted on five counts of violating Rule 10b-5. He argues first that there was insufficient evidence to permit the jury to find beyond a reasonable doubt that he acted with the intent to defraud Reiten. There is, however, ample evidence from which the jury could have inferred that Walls acted with specific intent to defraud. First, he had not been in contact with Reiten for several years at the time of the transactions. Second, the transactions were shrouded in secrecy, giving rise to an inference that Walls was acting illicitly. And finally, Walls' own explanation of these facts is highly implausible. One wonders, for example, why an established broker with a major firm who claims to be acting in his client's best interests, would react to suspicions of IRS actions against an account by secreting parts of that account in various places under his wife's name. Too, Walls' reaction to Merrill Lynch's investigation, especially in setting up a false Las Vegas address and phone number for Reiten, strongly support a finding of intent to defraud.
 
 
 6
 Much more plausible is the government's contention that Walls thought Reiten was dead or otherwise incapacitated, and so set about cautiously appropriating his client's account. In any case, this theory is a reasonable one for the jury to have accepted based on the evidence. As such, there was sufficient evidence to support a finding of intent to defraud, even without the documents Reiten allegedly signed during the meetings in November 1989.[1]
 
 
 7
 Walls also argues that there was insufficient evidence to support a finding that the fraud was accomplished through the sale or purchase of securities. There is no dispute that Walls engaged in five separate stock transactions in June and July 1988, and Walls concedes that he engaged in those transactions with Reiten's assets and without Reiten's knowledge. Walls argues, however, that there was no misrepresentation made to any buyer or seller in connection with any of the transactions. In effect, then, Walls is willing to concede that he sold Reiten's stock without his client's knowledge, but argues that such activity does not constitute a violation of Rule 10b-5.
 
 
 8
 In United States v. Kendrick, 692 F.2d 1262 (9th Cir.1982), cert. denied, 461 U.S. 914 (1983), this Court affirmed a conviction for a violation of Rule 10b-5 where the defendant stockbroker had used client funds to purchase securities for his personal benefit. Like Walls, the appellant there argued that his actions did not constitute securities fraud. The Court rejected this argument, stating that "[a]ppellant failed to disclose to his customers ... that he was acting beyond his authority in using customer funds for his own use...." Id. at 1265-66. Likewise, in the instant case, Walls failed to disclose to Reiten that he was engaging in numerous transactions involving securities in the client's account for his personal benefit.[2] Accordingly, a reasonable jury could find that the fraud was accomplished in connection with the sale or purchase of securities.
 
 B. Sufficiency of the Evidence--Mail Fraud
 
 9
 The mail fraud convictions were based upon the mailing of Reiten's account statements to Walls' home address and to the Las Vegas post office box. Walls argues that there was insufficient evidence to support the convictions because the mailings were not in furtherance of a scheme to defraud, and because there was no actual loss of money. As to the first contention, the jury could reasonably have found that Walls had the address on Reiten's account changed to Walls' home address so as to facilitate his fraudulent scheme. See United States v. Clark, 649 F.2d 534, 541 (7th Cir.1981) (affirming mail fraud conviction where mailings were designed to conceal the fraudulent nature of the transactions). The fact that the address change took place some years before the fraudulent transactions were undertaken does not mean that the scheme was not furthered thereby. As to the second contention, the district court properly ruled that the mail fraud statute does not require actual loss. United States v. Telink, Inc., 910 F.2d 598, 599 (9th Cir.1990).
 
 
 10
 C. Sufficiency of the Evidence--Interstate Transportation of Stolen Funds
 
 
 11
 The three counts of interstate transportation of stolen funds related to checks that Walls wrote on Reiten's account and mailed interstate. Walls argues that the convictions cannot stand because there was no showing that a person moved across state lines in connection with the fraudulent scheme, and because he was co-owner of the account and thus entitled to use the funds.
 
 
 12
 As the government notes, the first paragraph of the relevant statute, 18 U.S.C. § 2314, does not require that the victim of the fraud travel interstate; it merely requires the government to show that stolen funds were transported across state lines. Walls' second argument is based purely on his own testimony, which the jury could reasonably have disbelieved in light of the evidence presented by the government. There was sufficient evidence to support the § 2314 convictions.
 
 II. EVIDENTIARY ISSUES
 
 13
 Walls challenges several of the district court's evidentiary rulings. He argues (1) that the court erred in permitting Merrill Lynch attorney Richard Drew to testify against him in violation of the attorney-client privilege; (2) that the court abused its discretion in refusing defense counsel's request to recall witness Robert Chiaradio for further cross-examination; and (3) that the court abused its discretion in permitting attorney Stephen Young to testify in violation of Federal Rule of Evidence 408. The first claim is reviewed de novo, United States v. Gray, 876 F.2d 1411, 1415 (9th Cir.1989), cert. denied, 110 S.Ct. 2168 (1990), while the latter two claims are reviewed for an abuse of discretion.
 
 
 14
 Walls' first two evidentiary claims are wholly without merit. Attorney Drew was acting in his capacity as an investigator for Merrill Lynch in seeking to determine the status of Reiten's account. He made very clear to Walls that he was acting on the firm's behalf and that he intended to relate all that he learned to officials with the firm. Especially because the attorney-client privilege is to be "narrowly and strictly construed," id., the court did not err in admitting Drew's testimony.
 
 
 15
 The district court did not abuse its discretion in refusing to permit defense counsel to recall a witness who had already been subjected to extensive cross-examination. The court determined that the areas into which counsel sought to inquire had already been covered, and that further testimony would be redundant. The court did not abuse its discretion in so finding.
 
 
 16
 Finally, we find that the district court abused its discretion in permitting Young to testify about statements Walls made during their settlement conferences, but that the admission of the testimony constituted harmless error. In order to encourage settlement negotiations in the civil context, Rule 408 precludes the introduction of a party's offer to settle a claim. Admission of statements made during settlement negotiations, whether in a civil or criminal trial, discourages settlement negotiations. If an individual believes that any statements might be used in a future criminal trial, that individual will not be willing to discuss the possibility of a compromise at a settlement conference. Since such statements would not be admissible in a civil trial to prove liability it would be inconsistent and illogical to permit them to be admitted to prove guilt in a criminal trial as liability and guilt are truly synonymous. In addition, admission of statements made during settlement conferences conflicts with the rule prohibiting statements made during plea bargaining. See Fed.R.Evid. 410. Allowing such statements in would create an end run around the plea bargain rule in cases where the defendant's conduct exposes him to civil as well as criminal liability.
 
 
 17
 Nevertheless, admission of Walls' statements does not require a reversal in this case as it constitutes harmless error. When a district court commits nonconstitutional error, "reversal is warranted only if 'it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial.' " United States v. Browne, 829 F.2d 760, 766 (9th Cir.1987), cert. denied, 485 U.S. 991 (1988) (quoting United States v. McKoy, 771 F.2d 1207, 1212 (9th Cir.1985)). The error in this case violated a rule of evidence imposed to promote settlements and did not implicate any constitutional rights.
 
 
 18
 Young testified that several of the statements that Walls made to him during their conferences were untrue. He also testified about the eventual discovery of the account owner's whereabouts. Finally, he testified about attempts to negotiate for the reimbursement of stock and money taken from the account.
 
 
 19
 Even without the testimony of Young, it is more probable than not that the jury would have found Walls guilty of the crimes charged. Walls received Reiten's account statements at his home address, but could not produce any agreement proving he had the authority to do this. When confronted by Merrill Lynch officials, Walls gave them a phony address and telephone number in Las Vegas, stating that Reiten could be reached at that address and number. Walls opened the post office box in Las Vegas and personally set up the telephone answering service in Reiten's name.
 
 
 20
 There was evidence that Walls converted Reiten's account into a margin account, without the authority of Reiten. Walls also forged Reiten's name on several checks drawn on this account.
 
 
 21
 Walls then caused approximately 700 shares of stock to be taken out of Reiten's account and mailed to Walls' address. He forged Reiten's signature in order to withdraw approximately 1800 shares of stock, and placed them in his wife's account. Contrary to Merrill Lynch policy, this account did not contain the code designating that it was a family account in which Walls had an interest. This stock was transferred to another account in his wife's maiden name and the stock was subsequently sold and the proceeds were deposited in various bank accounts held by Walls and his wife.
 
 
 22
 Finally, Walls admitted that he intentionally lied to his superiors at Merrill Lynch and in the petition to have himself named conservator of Reiten's account. The lies in the petition included false statements that Reiten had authorized the transaction at issue, that Reiten had signed the power of attorney form Walls had given Merrill Lynch management, that the stock transfers to his wife were a gift from Reiten, and that Walls' wife was Reiten's adopted niece.
 
 
 23
 Given this evidence, it is more probable than not that the error was harmless. Young's testimony did not materially prejudice the verdict. His testimony did divulge several lies, but it was not the only testimony that revealed falsehoods told by Walls. Thus, Walls' credibility would have been called into question even without Young's testimony. In addition, the statements made during the settlement conference in which Walls offered to reimburse Reiten's account were not the only evidence from which the jury could conclude that Walls committed the crimes charged. Thus, the error was harmless.
 
 III. JURY INSTRUCTIONS
 
 24
 Walls argues that the court erred in refusing to give several instructions relating to his theory of the case. As the government correctly notes, there is a split in the Circuit as to the proper standard of review regarding such a claim. See United States v. Sotelo-Murillo, 887 F.2d 176, 179-80 (9th Cir.1989) (discussing split between cases call for de novo review and those applying abuse of discretion standard). As in Sotelo-Murillo, however, the panel need not reconcile those cases, as Walls' claim fails under either standard.
 
 
 25
 As the district court found, the proffered instructions did not offer a theory of the defense, but rather constituted factual assertions and arguments properly relegated to testimony and closing argument. The court did give instructions that adequately covered Walls' theory of defense, and did not err in refusing to give the additional instructions requested by Walls.
 
 IV. PROSECUTOR'S CLOSING ARGUMENT
 
 26
 Lastly, Walls argues that the prosecutor's statement in closing argument that he "defrauded Merrill Lynch by trying to cover up what he did," constituted plain error by adding a new theory upon which the jury might have convicted him. It is true that the fraud charges alleged that Walls defrauded Reiten, and not Merrill Lynch; to that extent, it may have been improper for the prosecutor to argue that the firm was also defrauded. However, in light of the evidence, which dealt with fraud on Reiten, and because the prosecutor's statement was a single, isolated error, it does not rise to the level of plain error.
 
 CONCLUSION
 
 27
 The appellant Walls' convictions are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 It was during these meetings in Wisconsin that Reiten allegedly wrote and/or signed the documents that the parties sought to introduce in the district court. These letters and declarations are included in the excerpts of record, and both parties argue that the documents support their contention regarding the issue of Walls' intent to defraud Reiten. The parties concede, however, that the district court refused to admit these proffered exhibits on the ground that they constituted hearsay testimony not within any of the acknowledged exceptions. Moreover, neither party argues on appeal that the district court erred in excluding the documents. The documents, then, are not part of the record, and the parties' extensive reliance upon them in the briefs is most improper
 
 
 [2]
 As the government notes, churning cases also involve 10b-5 liability where the person who is defrauded, i.e. the account owner, is not involved directly in the sale or purchase of the securities. Like Kendrick, then, churning further supports the conclusion that 10b-5 liability will lie where the broker trades on an account without the client's authority for the broker's own benefit. However, the government must satisfy a three-part test to make out a claim of churning, see generally Follansbee v. Davis, Skaggs & Co., Inc., 681 F.2d 673, 676 (9th Cir.1982), and it does not appear that the government proceeded at trial on a theory of churning