**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas MERINO, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William MERINO, Defendant–Appellant.**

**Nos. 93–10587, 94–10216.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1994.

Decided Dec. 21, 1994.

---

John Ashford Thompson, Honolulu, HI, for defendant-appellant Thomas Merino.

Hayden Aluli, Honolulu, HI, for defendant-appellant William Merino.

Craig H. Nakamura, Asst. U.S. Atty., Honolulu, HI, for the plaintiff-appellee.

Before: BROWNING, TROTT and KLEINFELD, Circuit Judges.

TROTT, Circuit Judge:

Thomas and William Merino pled guilty to Unauthorized Flight to Avoid Prosecution ("UFAP"), in violation of 18 U.S.C. § 1073. They both challenge their sentences. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We hold that the Sentencing Guidelines apply to the Merinos' crimes, and that the district court properly applied the Sentencing Guidelines. We also hold that the upward departure to William Merino's sentence satisfied *United States v. Lira-Bar-*

*raza*, 941 F.2d 745 (9th Cir.1991) (en banc). Finally, we hold that the sentences are not plainly unreasonable. Accordingly, we affirm both sentences.

## I

The facts are undisputed.

On August 27, 1986, a Hawaii grand jury indicted Thomas Merino ("Thomas") for attempted extortion and forgery and his father William Merino ("William") for attempted extortion and false reporting to law enforcement.

## A

Thomas was advised by a Hawaii judge on February 2, 1987, that trial would begin soon. He failed to appear for trial on February 9, 1987. Two bench warrants were issued for his arrest. Because Thomas could not be located in Hawaii, the FBI filed a federal UFAP complaint on March 16, 1987.

Thomas remained at large until August 28, 1989, when he was arrested in Newport Beach, California, pursuant to the UFAP complaint. He attempted to conceal his identity and avoid arrest by using an alias. Proceedings began in California to extradite Thomas to Hawaii. The California court granted him bail. On February 26, 1990, Thomas failed to appear for an extradition hearing in California. A bench warrant was issued for his arrest. Because Thomas could not be located in California, the FBI filed a second federal UFAP complaint on December 31, 1990. Thomas was arrested pursuant to the second UFAP complaint in Seattle, on January 30, 1992, and returned to Hawaii to stand trial.

## B

William's trial was set for August 1988. On the eve of trial, William pled guilty to the lesser offense of criminal conspiracy to commit theft. He declined to be represented by counsel, insisting instead on proceeding pro se. Sentencing was set for November 14, 1988, but sentencing was continued seven times due to William's repeated claims that illness prevented him from returning from

the mainland. Finally, on July 11, 1989, a bench warrant was issued for his arrest.

William returned to Hawaii the next day and appeared for a hearing. At the July 12, 1989, hearing, William's bail was amended to require written permission of the court for him to leave the island of Hawaii. He moved to withdraw his plea of guilty on the grounds that he was not represented by counsel and that his mind had been clouded by drugs.

A sentencing hearing was held August 2, 1989. The hearing was continued to August 4, 1989. William assured the Hawaii judge that he would appear on August 4, but on August 3, he left Hawaii. The FBI filed a UFAP complaint on September 5, 1989. Although he tried to conceal his identity and thus avoid arrest by using an alias, William was arrested pursuant to that UFAP complaint in San Diego on September 19, 1989.

Federal authorities handed William over to California state authorities. Proceedings to extradite William to Hawaii began. He contested his extradition. William jumped bail and failed to appear for a March 16, 1990, extradition hearing in California, and was arrested in Los Angeles on May 5, 1990. He was eventually returned to Hawaii.

On November 2, 1990, William's motion to withdraw his guilty plea was denied. The state court released him on bail. His sentencing was set for November 23, 1990. Again, William did not appear: he had checked himself into a hospital complaining of chest pains. His sentencing was continued to December 6, 1990. On November 28, 1990, William checked himself out of the hospital and left Hawaii. The FBI filed a second UFAP complaint on December 31, 1990. On January 30, 1992, William was arrested in Seattle along with his son Thomas Merino. William again attempted to conceal his identity by using an alias. His excuse for leaving in November was that he had had a family emergency: his daughter-in-law had died in a car accident and he was needed on the mainland to console his family. Apparently, however, she had died six weeks *after* his arrival on the mainland.

## C

On January 27, 1993, a federal grand jury indicted Thomas and William, each on two counts of UFAP. Thomas pled guilty on April 21, 1993. A sentencing hearing for Thomas was held on September 7, 1993. The district court adopted the calculations of the presentence report ("PSR"), finding that Thomas's Guideline range was 46 to 57 months (Offense Level 17, Criminal History Category V). He was sentenced to 52 months in prison.

William pled guilty on December 27, 1993. A sentencing hearing for William was held on April 11, 1994. The district court adopted the PSR, finding that William's Guideline range was 18 to 24 months (Offense Level 13, Criminal History Category III). The district court departed upward and sentenced him to 36 months of incarceration. Both Thomas and William appeal their sentences on numerous grounds.

## II

██ Thomas challenges the district court's conclusion that the Sentencing Guidelines apply to Thomas's first flight from Hawaii on February 9, 1987, because UFAP is a continuing offense. He argues that UFAP is not a continuing violation; therefore, the crime was completed upon his leaving the state on February 9, 1987, and not on the date he was arrested in California, August 28, 1989. Accordingly, he argues, the Sentencing Guidelines don't apply because the crime was committed prior to their effective date of November 1, 1987.

██ The applicability of the Sentencing Guidelines to Thomas's UFAP offense is a question of law, reviewed de novo, without deference to the sentencing court's interpretation. *United States v. Gray*, 876 F.2d 1411, 1418 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).

In *Gray*, we held that failure to appear for sentencing in violation of 18 U.S.C. § 3146(a) is a continuing offense. 876 F.2d at 1419. The government suggests that *Gray* supplies authority for the proposition that UFAP, also, is a continuing offense. Even though

the defendant in *Gray* failed to appear for sentencing, whereas Thomas's first UFAP was for failure to appear for trial, the government is correct. Unlike the *Gray* defendant, Thomas was not yet a convicted felon, and therefore did not pose the same danger to society noted by us in *Gray* of having convicted criminals at large. We conclude nevertheless that UFAP is a continuing offense because of the "threat to the integrity and authority of the court," *see Gray*, 876 F.2d at 1419, posed by a recalcitrant defendant who refuses to abide by lawful court orders. Accordingly, we affirm the district court's application of the Sentencing Guidelines to Thomas's first UFAP offense.[1]

### III

■ No specific Sentencing Guideline exists for the crime of UFAP. Both Thomas and William challenge the district court's application of U.S.S.G. § 2J1.2, Obstruction of Justice, as the most analogous Guideline to UFAP, for purposes of calculating their base offense level. They argue the district court should have applied U.S.S.G. § 2J1.6, Failure to Appear.

■ The selection of an analogous Guideline where no specific Guideline exists is an application of the Sentencing Guidelines, which is reviewed de novo. *United States v. Buenrostro–Torres*, 24 F.3d 1173, 1174 (9th Cir.1994). Factual findings by the district court are reviewed for clear error. *Id.* We will affirm a sentence imposed for an offense for which there is no applicable sentencing guideline if it is not "plainly unreasonable." 18 U.S.C. § 3742(f)(2)–(3).

The district court concluded that the Merinos' conduct went beyond mere failure to appear. It found that Thomas was determined never to face the pending charges, which made his conduct more like obstruction of justice than an isolated instance of a failure to appear. The district court also determined that William's flight from justice

was for the purpose of avoiding adjudication and sentencing.

The district court's finding of Thomas and William's purpose was fully supported by the record. Thomas repeatedly left the jurisdiction rather than face charges. William flew out of Honolulu on August 3, 1989, one day after promising a state judge he would appear on August 4, 1989, for a sentencing. Furthermore, the district court was justified in drawing the inference that William's reasons for leaving the jurisdiction were incredible.

The district court's interpretation of the Guidelines was also correct. The background note to U.S.S.G. § 2J1.2 explains that "the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed." Thomas and William did not simply fail to appear; they each undertook a scheme to avoid punishment. *Cf. United States v. Gabay*, 923 F.2d 1536, 1544–45 (11th Cir.1991) (holding § 2J1.6 not analogous to defendant's activity which was "much more abhorrent than just failing to appear"). We conclude that the sentence imposed was not plainly unreasonable. In fact, the sentence was manifestly appropriate. Accordingly, we affirm the district court's application of the Obstruction of Justice Sentencing Guideline, U.S.S.G. § 2J1.2, to the calculation of both Thomas and William's sentences.

### IV

Thomas appeals the various adjustments made to his offense level. We reject his challenges.

■ He first challenges the district court's application, over his objection, of a 2–level upward adjustment for obstruction of justice. A district court's application of the Sentencing Guidelines is subject to de novo review. *Buenrostro–Torres*, 24 F.3d at 1174. If Thomas wilfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the sentencing of his

1. The government further urges us to deem UFAP a continuing offense because of the federal statute which tolls statutes of limitation for any person fleeing from justice. *See* 18 U.S.C. § 3290. This federal tolling statute, however, presumably only tolls statutes of limitation for federal crimes. A state statute of limitation is not necessarily tolled by a federal tolling statute. Hence we reject this justification for deeming UFAP a continuing offense.

UFAP offense, the district court was required to enhance his offense level by 2 levels. U.S.S.G. § 3C1.1.

The district court applied the enhancement because Thomas lied to the probation office and conveniently omitted a conviction on his record which occurred during one of his periods on the lam. Thomas did not object to the fact of his omitting the information; he claimed instead that he had a valid reason to do so. We conclude that the district court's factual finding is supported by the record. We also conclude that Thomas's lies to the probation office are at least an attempted obstruction of justice during sentencing, and accordingly affirm the district court's enhancement of Thomas's offense level.

■■■ Thomas next challenges the district court's refusal to apply a 2–level downward adjustment to his offense level under U.S.S.G. § 3E1.1. Whether Thomas accepted responsibility is a finding of fact reviewed for clear error. *United States v. McKinney,* 15 F.3d 849, 852 n. 6 (9th Cir.1994).

Ordinarily, an enhancement made under section 3C1.1 would indicate that Thomas had not accepted responsibility for his criminal conduct. U.S.S.G. § 3E1.1, Application Note 4. The district court merely adhered to that application note. Nothing in the record indicates that Thomas's situation was one of those extraordinary cases where a section 3C1.1 enhancement should not preclude a section 3E1.1 downward adjustment. Accordingly, we affirm the district court's finding that Thomas was not entitled to a reduction for acceptance of responsibility.

■■■ Thomas finally challenges the district court's 3–level enhancement of his offense level under U.S.S.G. § 2J1.2(b)(2), characterizing it as "double-dipping." He argues that this enhancement would not have applied if the district court had applied U.S.S.G. § 2J1.6 (the Guideline he had originally proposed as analogous).

The district court correctly concluded that once an applicable Guideline, such as section 2J1.2, is selected, the district court must adjust the offense level according to that Guideline. If Thomas's UFAP resulted in a substantial interference with the administration of justice, the district court was required to apply the 3–level enhancement. U.S.S.G. § 2J1.2(b)(2). Thomas's UFAP did result in a substantial interference with the administration of justice. He remained at large for a total period of about five years. Ample government resources were expended searching for him. We conclude this enhancement was merely an ordinary application of the Sentencing Guidelines.

In sum, we hold that the district court applied the Sentencing Guidelines correctly in adjusting Thomas's offense level.

V

■■■ Thomas challenges the inclusion of a forgery conviction in his criminal history calculation as a prior conviction. He claims that because he was convicted of forgery after he committed the federal offense for which he was sentenced, that conviction should not be included as a "prior conviction." The district court disagreed, concluding that any conviction prior to the sentencing, whether or not committed after the underlying crime, was to be considered at sentencing. The district court was correct.

■■■ Even a state conviction for conduct which occurred *after* the defendant's federal offense, but for which the defendant was sentenced before his sentencing on the federal offense, is properly counted as a prior sentence. This rule is a violation of neither the Ex Post Facto Clause nor due process or equal protection. *United States v. Carson,* 988 F.2d 80, 81–82 (9th Cir.) (per curiam), *cert. denied,* ―― U.S. ――, 114 S.Ct. 142, 126 L.Ed.2d 105 (1993). Thomas's state conviction was for conduct which occurred *before* Thomas's federal offense, although he was sentenced after his federal offense. His state conviction was manifestly a prior conviction for purposes of the Sentencing Guidelines. We affirm the district court's inclusion of Thomas's forgery conviction as a prior conviction in calculating his criminal history category.

VI

■■■ The district court concluded that the sentence resulting from the application of the

analogous Guideline was not sufficient to reflect the seriousness of William's obstruction of justice. It departed upward five levels from the Guideline range of 18 to 24 months. The government recommended a sentence of 41 months, at the high end of the range resulting from the 5–level upward departure, because of the extraordinary circumstances of the case. William suggested that a 24–month sentence would be appropriate, or, if the court departed upward, a 33–month sentence, at the low end of the range resulting from the 5–level upward departure. Because William was ill, the district court increased his sentence by only twelve months—less time than requested by the government—for a total of 36 months. William challenges this upward departure of 12 months. We reject his challenge.

■ We review the district court's departure under the *Lira–Barraza* test: 1) whether the district court had legal authority to depart is reviewed de novo; 2) the district court's factual findings are reviewed for clear error; and 3) the extent of the district court's departure is reviewed for reasonableness. *United States v. Lira–Barraza,* 941 F.2d 745, 746–47 (9th Cir.1991) (en banc).

■ The district court had legal authority to depart on the ground that William repeatedly committed the same offense. He repeatedly absconded from the jurisdiction of the Hawaii and California courts to avoid prosecution and extradition. This was an aggravating factor not adequately taken into account by the Sentencing Commission. *Cf. United States v. Montenegro–Rojo,* 908 F.2d 425, 429 (9th Cir.1990) (permitting upward departure from criminal history category on ground that similarity of past crimes indicate greater likelihood of recidivism).

William failed to appear at an extradition hearing in California on March 16, 1990. This failure to appear was not charged as a UFAP offense, however, because there was no proof that he had crossed the state line and left California before he was rearrested in Los Angeles on May 5, 1990.

■ William's repeated use of fictitious names upon arrest was also an adequate ground for departure. *United States v. Hernandez–Vasquez,* 884 F.2d 1314, 1315–16 (9th Cir.1989).

Accordingly, we conclude that the district court had legal authority to depart upward because of William's repeated flights and his repeated lies, which constituted egregious conduct. *United States v. Momeni,* 991 F.2d 493, 496 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 280, 126 L.Ed.2d 230 (1993).

William does not challenge the factual findings in the PSR, and we conclude that the factual findings in the PSR adopted by the district court are faultless.

■ Finally, the extent of the district court's departure was reasonable. The district court must give a statement of reasons for the length of the sentence. The statement "should include a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the [Sentencing Reform] Act and Guidelines." *Lira–Barraza,* 941 F.2d at 751.

■ The district court adequately explained the extent of the departure. The district court departed because of William's pattern of flight and repeated lies, and because the prosecution of the two UFAP charges would not take into account the uncharged third flight from a California state court proceeding. The twenty-four months dictated by the Sentencing Guidelines calculations did not adequately take into account the egregiousness of his conduct. The district court granted the upward departure because the Guidelines understated, diminished, and did not adequately reflect the importance of punishing someone who has made a mockery of the system of justice. Only an upward departure would permit the district court to increase his sentence to reflect his underlying conduct. Furthermore, unless the resulting sentence is "plainly unreasonable," we must affirm. 18 U.S.C. § 3742(f)(2)–(3). We cannot say that the additional twelve months imposed by the district court are plainly unreasonable, to the contrary.

Because the district court had legal authority to depart, and because it otherwise complied with the relevant statutes and *Lira–Barraza*, we affirm the upward departure.

## VII

■ The district court imposed William's federal sentence for UFAP consecutive to his underlying state sentence. William challenges the consecutive imposition, arguing that the district court should have imposed the sentence concurrently. We conclude that it was within the discretion of the district court to impose the sentence consecutively.

■ The imposition of a consecutive rather than concurrent sentence is an application of the Sentencing Guidelines, which is reviewed de novo. *Buenrostro–Torres*, 24 F.3d at 1174. Factual findings by the district court relating to prior convictions are reviewed for clear error. *United States v. Robinson*, 967 F.2d 287, 293 (9th Cir.1992).

On March 12, 1992, William was sentenced to 5 years' incarceration for underlying state charges. Williams does not challenge the fact of his prior conviction in state court. We conclude that the district court's adoption of the factual findings in the PSR related to William's state conviction are correct.

If the sentencing court fully took into account the undischarged 5–year term of state incarceration when it determined William's offense level, then the federal sentence must be imposed to run concurrently. U.S.S.G. § 5G1.3(b). But if not, then William's federal sentence must be imposed to run consecutively "to the extent necessary to achieve a reasonable incremental punishment for the instant offense." U.S.S.G. § 5G1.3(c) (Policy Statement). According to the Application Note background, the result intended by this Guideline is a sentence that most nearly approximates the sentence that would have been imposed if all the sentences had been federal and had been imposed at the same time. U.S.S.G. § 5G1.3(c), Application Note 3.

William's PSR did not take his state sentence into account in setting his base offense level. Therefore, section 5G1.3(b) does not apply. William was convicted in state court of conspiracy to promote or facilitate theft resulting in a loss of over $300,000. He was sentenced to 60 months of state incarceration. The probation office calculated that, had his state conviction been federal, and had both his sentences been imposed at the same time, his total sentence would have ranged between 51 to 63 months. (For his federal UFAP sentence, his offense level was 13, with a criminal history category of III. This would result in a range of 18 to 24 months, apart from the departure.) According to U.S.S.G. § 3D1.4, William's total sentence should range somewhere approximately between 51 and 63 months.

Because William is only expected to serve 36 months of his 60–month term of state incarceration, only a consecutive federal sentence would provide the reasonable incremental punishment. To put it arithmetically: 36 months [state sentence] + 18 to 24 months [federal sentence] = 54 to 60 months total.

While the district court did depart upward, imposing an additional 12 months of incarceration, it stated that it was not basing its decision to depart upward on the state crimes. The departure upward was imposed independently of this U.S.S.G. § 5G1.3 analysis. Accordingly, the district court's imposition of a consecutive rather than concurrent sentence was appropriate.

AFFIRMED.