WALLACE, Circuit Judge,
dissenting:
I respectfully dissent. Mageno did not object to the alleged prosecutorial misstatements at trial, and did not argue that the statements prejudiced her in her appellate briefs. Mageno’s appeal meets none of our exceptions for consideration of waived arguments. Instead of following our precedent and deeming the argument waived, the majority creates a new exception, considering an argument raised for the first time not by the appellant at trial, nor in appellate briefs, but by a member of our panel hearing argument. Consideration of the issue in these circumstances is inconsistent with our case law and the purposes behind our rules about preserving issues for appeal.
Not only does the majority improperly reach the prosecutorial statements despite Mageno’s waiver, the majority also incorrectly concludes that the prosecutors’ statements constituted plain error. Only one of the statements was improper. There was so much evidence submitted by the government at trial that Mageno would have been convicted regardless of the statements. Some of the prejudice Mage-no may have suffered was mitigated by the district court’s curative instructions, and any misstatements were unintentional.
Finally, the majority’s language implies that the district court judge and the government committed serious errors in Ma-geno’s trial. In fact, it was Mageno’s own attorney who committed the most troubling errors in her trial.
I.
The government admits that at one point in its closing arguments to the jury, a prosecutor erroneously stated that Nancy Mageno’s godson, Jesus Guadalupe Felix Burgos, had testified that she knew he had been previously convicted and deported for a drug-related offense. In fact, Burgos had testified about his close relationship with Mageno and that he had been previously convicted and deported for that drug offense, but he had not specifically testified that Mageno knew why he had been deported. But Mageno’s attorney did not object to the government’s misleading statement.
In an abundance of caution, the government also asserted in its appellate brief that three other statements made in its closing argument were improper, a position with which the majority now agrees. In my view, these statements were not erroneous because Mageno’s knowledge could be properly inferred from the evidence submitted to the jury about the close relationship between Burgos and Ma-geno. Regardless, Mageno’s attorney objected to none of these allegedly misleading statements.
To recap, the government prosecutor first argued in closing statements that Ma-geno “had a choice whether to let her godson who she already knew had been deported for distributing methamphetamine move in with her,” and that Mageno “made the choice to help her godson, Vir- *950 rio, the one who had already been deported for distributing methamphetamine.” Mageno’s attorney did not object that there was no direct evidence that Mageno knew Burgos had been deported for distributing methamphetamine.
A few minutes later, the government stated that Burgos “explained to you she knew [about his deportation] because he was living with her, then he comes back,” and that Mageno “already in her head knew that [Burgos], the person she was translating for, has a history of distributing methamphetamine.” Mageno’s attorney did not object.
The government concluded its argument on a similar note: the jury should convict Mageno because she “knew she was translating for a known methamphetamine dealer.” Mageno’s attorney did not object. Thus far, in my view, the government’s statements were proper, based upon the inference that Mageno knew those facts, and also knew why Burgos had been deported, on the basis of the evidence submitted to the jury regarding their relationship.
In the defense argument, Mageno’s attorney stated, without “a hundred percent” confidence, that Burgos had in fact testified that Mageno “knew about” why he had been deported, or that “she knew why I was deported.” This is when the actual error was first introduced: when Mageno’s own attorney suggested that Burgos had testified that Mageno knew why he was deported.
On rebuttal, the government followed Mageno’s attorney and stated that Mageno knew that Burgos had “been deported because he was trafficking methamphetamine while he was living with her. He testified she knew why he was deported.” Mage-no’s attorney did not object. While there was sufficient indirect evidence in the record that Mageno knew the reason for Bur-gos’s deportation, Burgos had not testified that Mageno knew. Both the defense argument and the government’s closing rebuttal arguments were in error.
Based upon the evidence at trial, including four telephone calls obtained through lawful wiretaps between Mageno and drug customers or federal agents posing as drug customers, where Mageno translated certain suspicious words on behalf of Burgos, Mageno was convicted of conspiracy to distribute a controlled substance. Mageno did not file a post-conviction motion to vacate the judgment and grant a new trial based on the government’s statements during closing arguments. See Fed. R.Crim.P. 33. Instead, Mageno filed this appeal on a single ground: that there was insufficient evidence to support her conviction. She never raised any of the government’s statements regarding her knowledge of why Burgos had been deported. In its appellate brief, the government “admirably,” in the majority’s words, acknowledged the prosecutors’ possibly misleading statements. Majority Op. at 949. In its brief, the government argued that the statements nonetheless did not warrant reversal of Mageno’s conviction, because the prosecutors had not made the statements in bad faith, Mageno was not deprived of a fair trial, the district court instructed the jury that arguments by attorneys are not evidence, and Mageno would have been convicted even if the government had not made the statements. Mageno was thus indisputably on notice of the prosecutors’ statements. However, she did not submit any reply brief to adopt the statements as a basis for reversal in her appeal.
At the first part of oral argument before this court, Mageno’s attorney did not affirmatively raise the argument that the government committed reversible error. More than four minutes of his allotted ten minutes passed before a member of the *951 panel of this court asked Mageno’s attorney about the government’s statements. After further discussion by the judge, Ma-geno’s attorney responded to the judge’s assertion of Mageno’s position by stating that the statements were “a valid argument” to support reversal. Even then, Mageno’s attorney spent his subsequent time explaining why he had made the misleading statement in his closing argument instead of arguing that the government’s statements prejudiced Mageno. Near the end of his allotted argument time, Mage-no’s attorney offhandedly stated “I don’t believe [the government’s ’ statements were] harmless error.”[1] At the very end of argument, Mageno’s attorney returned to the point in passing, still not clearly arguing that Mageno had suffered any prejudice from the government’s statements.
II.
The majority errs first by even considering whether to reverse Mageno’s conviction based on the government’s statements. Mageno did not object to the government’s statements at trial. She did not argue in either her opening or reply brief on appeal that her conviction should be reversed based on the statements. In fact, her lawyer only commented on the unraised issue when questioned about it during oral argument. When an appellant does not present an argument for review in any brief, we usually would consider that argument for reversal waived. We recognize some exceptions to that rule. But, contrary to the majority, none of the exceptions apply here, because the government did not fully brief the issues addressed in the majority’s disposition. We should refuse to review the government’s alleged misstatements, because Mageno has waived any argument that the statements constituted “plain error.”
The majority’s review of the government’s statements is wrong for at least two other reasons. The majority asserts it considers the prosecutorial comments “in the context of the entire trial.” Majority Op. at 944. But such review is impossible without adversarial briefing. Instead, the majority repeatedly assumes the effect of the prosecutorial statements from the cold record and its speculation about trial practice. Whatever review the majority performs, it is not review “in the context of the entire trial.”
Finally, the majority considers the pros-ecutorial statements because Mageno’s attorney did “adopt[ ] the issue at oral argument” before this court, so review of the statements allows Mageno to remain the “master of her appeal.” Majority Op. at 941. But Mageno’s attorney’s indifferent responses to questions from a member of this panel do not constitute “adoption” of an argument for purposes of our review.
A.
A convicted criminal who fails to object to a prosecutorial or judicial error at trial can still seek relief on appeal if the mistake is “a plain error that affects substantial rights.” United States v. Marcus, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010), quoting Fed.R.CRIM.P. 52(b). The “burden of establishing entitlement to relief for plain error is on the defendant claiming it, and for several reasons ... that burden should not be too easy for defendants.” United States v. Dominguez *952 Benitez, 542 U.S. 74, 82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).
Separately, when an appellant fails to argue, specifically and distinctly, an issue in his opening brief on appeal, we usually hold that the appellant has waived his right of appellate review of that issue, even in criminal cases. United States v. Rodriguez-Preciado, 399 F.3d 1118, 1126 (9th Cir.2005).
Mageno did not object to any of the government’s statements at trial, and did not argue that the statements merited reversal of her conviction in her opening or reply briefs on appeal. The government repeatedly argued that because “Mageno has not argued that the prosecutors’ statements warrant reversal,” she “has therefore forfeited such a claim.” Thus, under our normal practice, we would not consider the statements in this appeal.
B.
I recognize that our court sometimes considers arguments not raised in an opening brief. Our precedent makes clear that the circumstances are limited to three well-established exceptions. “First, we will review an issue not present in an opening brief for good cause shown, or if a failure to do so would result in manifest injustice. Second, we have discretion to review an issue not raised by appellant when it is raised in the appellee’s brief. Third, we may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party.” United States v. Ullah, 976 F.2d 509, 514 (9th Cir.1992) (citations and internal quotation marks omitted). Contrary to the majority’s conclusion, none of the exceptions apply here. Further, consideration of an issue so thoroughly waived is inconsistent with the purposes of our rules about preserving issues for appeal.
1.
The majority asserts that we may consider the prosecutorial statements because the government addressed the statements in its appellate brief, and thus is not prejudiced, so both the “second and third circumstances [from Ullah] exist [to] justify our reaching the issue.” Majority Op. at 940. While the government did notify us of its possibly misleading statements in the closing argument, the government did not have the opportunity to brief fully two of the issues reached by the majority, and thus is prejudiced by the majority’s reversal on that basis.
The government has never had the opportunity to rebut the legal sources the majority now offers to reverse Mageno’s conviction. Majority Op. at 943M:9. Had Mageno adopted the argument in her optional reply brief, as the government likely assumed, the government would have then had the opportunity to file a supplemental brief or respond to her analysis in oral argument. But Mageno did not file any reply brief. Because of that failure, the government never had the opportunity to explain (as I do later) the incorrect reasoning used to reverse Mageno’s conviction.
Second, the government has never had the opportunity to rebut the majority’s nearly unprecedented relief of reversing a conviction based on an error in these factual circumstances, when not objected to at trial or raised in either an opening or reply brief. The majority cites to no binding authority from the past thirty years where this court or the Supreme Court has reversed a conviction when a defendant did not object to an alleged government error at trial, did not raise the alleged error in her opening brief, and did not raise or even refer to the alleged error in her optional reply brief. Even in United States v. Atkinson, 297 U.S. 157, 56 S.Ct. *953 391, 80 L.Ed. 555 (1936), where the Supreme Court first recognized that “[i]n exceptional circumstances, especially in criminal cases, appellate courts ... may, of their own motion, notice errors to which no exception has been taken,” the Court held that “no such case is presented here,” and affirmed the conviction because “the error assigned was not made the subject of appropriate exception or request to charge upon the trial.” Id. at 160, 56 S.Ct. 391.
If Mageno had raised the argument in her reply brief, the government could have prepared to argue specifically about the statements at oral argument. But Mageno never did so. The government thus has not had the opportunity to explain why this case does not implicate the drastic remedy offered by the Supreme Court in Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962) (per cu-riam).[2] The majority’s reversal in this posture thus prejudices the government. Contrary to the majority, neither the second nor third exceptions from Ullah apply here.
2.
We also consider an argument not raised in an opening brief when there is “good cause shown” or “failure to do so would result in manifest injustice.” Ullah, 976 F.2d at 514. Mageno has not shown good cause for her failure to raise the prosecu-torial misstatements in her opening brief. In fact, she has shown absolutely nothing because she failed to file any reply brief, and there is nothing in the record to show she was unable to raise the issue, at the latest, in a reply brief. See, e.g., Rosenbaum v. City & Cnty. of San Francisco, 484 F.3d 1142, 1150 n. 3 (9th Cir.2007) (considering an argument not raised in an opening brief because appellants explained in their reply brief why they had not done so).
Nor would Mageno suffer a manifest injustice if we did not consider the prose-cutorial statements. If Mageno did suffer any prejudice from the government’s statements, she could still have her conviction vacated, despite her waiver before this court, by filing a habeas petition based on ineffective assistance of counsel. She could then properly raise for judicial review the government’s statements and her attorney’s failure to object to, or brief, those statements. This is the approach *954 taken by some of our sister circuits. United States v. Evans, 131 F.3d 1192, 1193 (7th Cir.1997) (refusing to address an issue raised by defendant for the first time in a reply brief, because the defendant “may present this contention under 28 U.S.C. § 2255”); see also United States v. Jernigan, 341 F.3d 1273, 1290-92 (11th Cir.2003) (Fullam, J., concurring) (appellants cannot be afforded relief on direct appeal “but must await collateral attack via a § 2255 motion” because they did not object to the error at trial or raise the issue on appeal even though “neither appellant received a fundamentally fair trial”).
Requiring Mageno to raise the ineffectiveness of her counsel in a collateral proceeding is particularly necessary here, because Mageno still employs the same counsel who acted deficiently at trial and on appeal. I have found no case where a court has held counsel to be ineffective when the lawyer still represents the defendant. Mageno’s attorney is still acting as her agent, so she is responsible for any negligent acts he may have committed. Coleman v. Thompson, 501 U.S. 722, 753-54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); accord Walls v. Bowersox, 151 F.3d 827, 836 (8th Cir.1998) (viewing “counsel’s pronouncements regarding his [own ineffective] performance with extreme skepticism”).
Because the majority wrongly concludes that the second and third Ullah exceptions apply, it “do[es] not consider whether this is a case involving ‘manifest injustice.’ ” Majority Op. at 940 n. 5. Regardless, it criticizes my view that Mageno should raise the government’s statements in a collateral proceeding after firing her attorney because this would be a “greater injustice,” and states that “[w]e need not now decide whether punting an otherwise ripe issue from a direct appeal to habeas corpus review is ever justified.” Id. at 943 n. 9. But that argument misses the point. As I explain above, the ineffective-assistance issue is not ripe, because Mageno has not fired her attorney or raised the issue, and the record about Mageno’s attorney’s strategic decisionmaking (or lack thereof) is not complete. While the majority suggests it would be an injustice to require Mageno “to wait in prison one, two, three or more years longer to get to the same result” of release from prison, that is precisely what the Supreme Court requires: even when a defendant has a meritorious claim for ineffective assistance, the defendant often must wait, in prison, to file a collateral attack instead of having a court decide the issue on direct appeal. Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003) (“in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance”).
3.
I understand that our rules about preserving issues can sometimes seem academic and formalistic, rather than practical. As a result, we often see serious disagreements regarding whether to apply the rules in face of an alleged “manifest injustice.” See, e.g., Ward v. Chavez, 678 F.3d 1042, 1052 n. 6 (9th Cir.2012); id. at 1053-54 (Wallace, J., dissenting); Hall v. City of Los Angeles, 697 F.3d 1059, 1070-72 (9th Cir.2012); id. at 1077-78 (Ikuta, J., dissenting).
There are indeed important “formal” reasons for holding that a party waives an issue if he fails specifically and distinctly to provide argument about the issue at trial or in appellate briefs. Because judges “are not like pigs, hunting for truffles buried in briefs,” we require parties to preserve valid issues to assist our review. Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir.1994), citing United States v. Dunkel, *955 927 F.2d 955, 956 (7th Cir.1991). As. a general matter, we have an adversarial court system, where “appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.” Nat’l Aeronautics & Space Admin. v. Nelson, 562 U.S. 134, 131 S.Ct. 746, 756 n. 10, 178 L.Ed.2d 667 (2011); Knox v. Serv. Employees Int’l Union, Local 1000, — U.S. -, 132 S.Ct. 2277, 2298, 183 L.Ed.2d 281 (2012) (Sotomayor, J., concurring in the judgment); see also Diarmuid F. O’Seann-lain, The Role of the Federal Judge Under the Constitution: Some Perspectives from the Ninth Circuit, 33 Harv. J.L. & Pub. Pol’y 963, 975-78 (2010). We should also encourage parties to raise issues before district judges, who have greater competence to find facts, which allows us to rule on a complete record. Joan E. Steinman, Appellate Courts as First Responders: The Constitutionality and Propriety of Appellate Courts’ Resolving Issues in the First Instance, 87 Notee DaME L.Rev. 1521, 1602-04 (2012). Further, we do not have the resources to be able to examine minutely every trial record without assistance from the litigants to determine if a defendant’s constitutional rights have been violated. Sarah M.R. Cravens, Involved Appellate Judging, 88 Maeq. L.Rev. 251, 272-73 (2004).
Regardless of our personal views on our law about waiver, we, as a three judge panel, have no power to create a new exception beyond the three from Ullah. See Kama, 394 F.3d at 1238 (“we will not apply an exception [besides the three from Ullah] on our own accord”). We are bound by a prior decision about a procedural rule like appellate waiver no less than a decision about a substantive rule. Miller v. Gammie, 335 F.3d 889 (9th Cir.2003) (en banc). Because this case does not meet any of the exceptions from Ullah, we should not consider the prosecutorial statements at all.
C.
The majority’s decision to consider the prosecutorial statements is not only inconsistent with pur case law and the formal bases for our waiver rules. There are also important practical reasons for our rules, which are well-illustrated by this appeal.
As the majority describes, we can only reverse Mageno’s conviction if the government’s alleged misstatements “affected Mageno’s .‘substantial rights’ ” in that “they were sufficiently prejudicial.” Majority Op. at 944. The majority carefully reviews the record to determine the prejudice Mageno may have suffered. But it may have missed a statement by the government or the district court judge that further mitigated any prejudice that Ma-geno suffered from the comments. The majority may have incorrectly assessed the extent of the evidence submitted to the jury against Mageno. Because Mageno failed to raise the issue in-opening or reply brief, the government has not been afforded the opportunity to submit reference to evidence or argument regarding the tone or inflection used by the prosecutors when making the statements, considerations which we recognize are important in reviewing whether an attorney argument is improper. Lasar v. Ford Motor Co., 399 F.3d 1101, 1114-15 (9th Cir.2005). All the majority has is the cold record and six pages of the government’s appellate brief as its basis for deciding to reverse Mage-no’s conviction.
Indeed, as the majority correctly states, we must consider the government’s statements “in the context of the entire trial.” Majority Op. at 944. But there is no way to examine the context of this trial without adversarial briefing. Instead, the majority *956 cites to generalities from other cases and its own speculation and understanding of trial practice: “[m]isstating the evidence from trial is a particularly prejudicial form of misconduct,” id. at 945; “the jury likely accepted the government’s characterization” and “likely would have speculated that the prosecutors’ misstatements had at least some factual basis,” id. at 945; “[a]n error that is ‘emphasized ... during [a] trial’ is more likely to influence a jury,” id. (citations omitted); “[t]he prominence the government afforded ... reflects the critical role the point was meant to play in convincing the jury that Mageno knew Burgos had been involved in drug activity,” id.; “[t]he prosecutors’ misstatements may have also confused defense counsel,” and that the defense attorney “fe[lt] that he had to poke holes in the foundational basis for Burgos’s non-existent testimony,” id. at 946; Mageno’s attorney’s statement “likely damaged the defense overall,” id.; and “had the statement about Mageno’s knowledge been made, it would almost surely have been believed,” id. at 947. These are generalizations, speculations, and assumptions about the jury’s response, the government’s intent, and Mageno’s attorney’s actions. They are not grounded in the record, and are not necessarily true of the actual trial we are reviewing.
If we refused to review the statements, Mageno could file a habeas petition based on ineffective assistance of counsel. That would allow her to provide specific record evidence about the actual trial we are reviewing. But the majority’s premature consideration fails to review the comments in the context of the entire trial.
D.
Finally, the majority suggests that its review honors the principle that Mageno is the “master of her appeal,” and that it only reviews the comments because Mageno’s attorney adopted the issue at oral argument. Majority Op. at 941-42.
But Mageno’s attorney did not adopt the argument. He merely agreed with a member of this court that it was “a valid argument.” He never made a coherent argument for why we should reverse, instead misstating the legal standard for our review. His passing responses do not constitute adoption of an argument. See Laboa v. Calderon, 224 F.3d 972, 980 n. 6 (9th Cir.2000) (refusing to consider an argument suggested by a habeas petitioner when stated with “cryptic” and “passing” references, because “we [do not] see how wholly crafting an argument on [the petitioner’s] behalf could be anything but prejudicial to the Warden”); accord Swipies v. Kofka, 419 F.3d 709, 717 (8th Cir.2005) (refusing to review an argument when the habeas petitioner did not object at trial or raise the argument in his appellate briefs, in light of his “inaction” and “relative indifference” to the argument).
E.
Under our usual rules requiring an appellant to raise an issue in its briefs, Mage-no has waived review of the government’s allegedly improper statements. This appeal does not meet any of the exceptions we have recognized to overcome such a waiver. Instead, the majority makes up a new exception out of whole cloth, at odds with the nature of the American adversarial system and inappropriate in this posture. There is no basis for the majority’s misguided consideration of the government’s alleged misstatements in Mageno’s trial. When a judge asks a question or makes a statement that, as the record proves here, was not adopted by defense counsel, the statement or question is not the appellant’s issue on appeal.
*957 III.
Even if we were to consider the government’s statements, the majority errs in reversing Mageno’s conviction. Mageno did not object to the statements, so we review for plain error. We should only reverse if “(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant’s substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Marcus, 560 U.S. at 262, 130 S.Ct. 2159 (citations and alterations omitted).
No plain error exists here. The jury could have inferred from the indirect evidence that Mageno knew why Burgos had been deported, which means that the government made only one misstatement. Even if we accept that all of the prosecutors’ statements at issue were erroneous, there is still no basis to reverse the conviction because the statements did not “so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.” Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The evidence against Mageno was so strong that the jury would have reached the same verdict without the statements, some of the prejudice she suffered was mitigated by the district court’s curative jury instructions, and any misstatements were inadvertent.
A.
In his testimony, Burgos stated that he had been living with Mageno in 2007, and that he was deported because he was trafficking methamphetamine. After he returned to the United States in March 2010, he moved back in with Mageno. Because of an objection, Burgos never answered the government’s flat question of whether Mageno knew why Burgos was deported.
In rebuttal argument, a prosecutor stated that Burgos “testified she knew why he was deported.” This statement was incorrect. But the other statements made by the government in closing argument are not clearly false. Burgos testified that he had been living with Mageno (his godmother), was deported for drug trafficking, and then moved back in with her. The jury could infer both that Mageno knew Burgos had been deported and why he had been deported. Prosecutors are free to argue reasonable inferences from the record. United States v. Gray, 876 F.2d 1411, 1417 (9th Cir.1989). Each of the other supposed misstatements the government made in closing was based on the reasonable inference that Mageno knew why Burgos had been deported, insofar as Ma-geno and Burgos were close and Burgos left Mageno’s house for three years and then, mysteriously, returned.
Contrary to the majority, we do not review whether that inference was “fairly weak,” Majority Op. at 944 n. 10, or even whether the government “requested] that the jury infer the facts stated.” Id. at 944 n. 11, citing United States v. Kojayan, 8 F.3d 1315, 1321 (9th Cir.1993) (holding the government did not commit misconduct when it “invite[d] the jury to infer things from the evidence,” but not holding the inverse, that a failure to invite the jury to reach a reasonable inference would necessarily be improper). Instead, we review only whether the inference was “reasonable.” Gray, 876 F.2d at 1411; see also United States v. Small, 74 F.3d 1276, 1281, 1284 (D.C.Cir.1996) (in an out-of-circuit case cited by the majority, the court held that a statement was an unreasonable inference from the evidence because there was “no evidence” to support the statement, but nonetheless affirmed the convic *958 tion). Here, the inference was reasonable because there was indeed some evidence to support the inference that Mageno knew why Burgos had been deported. Additionally, when we review a conviction on appeal we “must presume — even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflicting inferences] in favor of the prosecution.” Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[3]
At most, then, I believe the government made one, rather than five, erroneous statements in closing arguments: namely, that Burgos had testified that Mageno knew why her godson was deported.[4]
B.
But even if I agreed that all of the government’s statements were based on unreasonable inferences from the evidence and thus erroneous, there was sufficient evidence at trial that it is improbable the jury would have reached a different verdict if the government had not made them. Majority Op. at 936, 939-40 (agreeing with the government that the evidence was sufficient to support the jury’s verdict); United States v. Christophe, 833 F.2d 1296, 1301 (9th Cir.1987) (reversal of conviction based on prosecutorial misstatements only justified when “it is more probable than not that the misconduct materially affected the verdict”).
Jurors heard four telephone calls from lawfully obtained wiretaps between Mage-no and drug customers or federal agents posing as drug customers. In those calls, Mageno translated conversations for Bur-gos. A law enforcement agent testified that the conversations included code words for narcotics and narcotics sales.
After Mageno confronted an undercover agent who was following her, and Burgos told her that he was involved in drug activities, she refused to mention Burgos’s location to a caller “over the phone,” because “things are also happening here.” An agent with knowledge of this conversation testified at trial that Mageno intended for the caller to call Burgos on a different number in case a law enforcement offer was listening. After Mageno indisputably knew of Burgos’s drug activities, she traveled with him to Yakima, Washington.
This evidence shows that regardless of whether the prosecutors had made the statements, the jury would still have convicted Mageno. Although “there was no direct evidence of Mageno’s knowledge of drug trading,” Majority Op. at 947, the testimony at trial demonstrated that Ma-geno continued to interact with Burgos at *959 least twice after she indisputably knew that he was dealing drugs, when she was evasive towards the telephone caller, and on the trip to Yakima. Her continued interaction with Burgos after she certainly knew he was involved in narcotics provides strong circumstantial evidence that she knew of his involvement all along.
C.
Even if the government’s statements were in error, most of the prejudice Mage-no may have suffered was mitigated by the district court’s jury instructions. First, before opening statements, the judge stated that “the questions of the lawyers and their arguments are not evidence. What the witnesses say is evidence ... so it’s the statements of the witnesses, the testimony of the witnesses, that’s important.” During jury instructions, before closing arguments, the district court instructed the jury that:
In reaching your verdict, you may consider only the testimony and exhibits received in evidence. The following things are not evidence and you may not consider them in deciding what the facts are: Number one, questions, statements, objections, and arguments by the — let me start that again. Number one, questions, statements, objections, and arguments by the lawyers are not evidence. The lawyers are not witnesses. Although you may consider a lawyer’s questions to understand the answers of a witness, the lawyer’s questions are not evidence. Similarly, what the lawyers have said in their opening statements, what they will say at their closing arguments, and at other times, is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers state them, your memory of them controls.
Finally, the judge repeated one more time: “The arguments and statements of the attorneys are not evidence. If you remember the facts differently from the way the attorneys have stated them, you should base your decision on what you remember.”
Because juries are presumed to follow instructions given to them, the district judge’s curative statements mitigated the prejudice Mageno may have suffered from the misstatements. See United States v. Bracy, 67 F.3d 1421, 1431 (9th Cir.1995) (even if the prosecutorial statement was improper, the district court’s caution to the jury that “ ‘[questions, objections, statements, and arguments of counsel are not evidence in the case.’ ... neutralized any prejudicial effect the prosecutor’s statement may have had”).
The majority tries to distinguish this rule by arguing that “general” rather than “specific” instructions do not mitigate the prejudice caused by prosecutorial misstatements of fact. Majority Op. at 944-45. But the majority can only do so by overreading our decisions. Though we have suggested that general jury instructions do not always fully “neutralize” the harm of an improper prosecutorial comment, United States v. Kerr, 981 F.2d 1050, 1054 (9th Cir.1992), United States v. Combs, 379 F.3d 564, 575 (9th Cir.2004), we have never held that general instructions are wholly irrelevant to our determination of prejudice, and in fact have held precisely the opposite. Hein v. Sullivan, 601 F.3d 897, 914-16 (9th Cir.2010) (“much of the potential prejudice of the prosecution’s comments was mitigated. The trial court sustained a number of objections and gave timely cautionary instructions to the jury, including general instructions about the hortative nature of summation”); Bracy, 67 F.3d at 1431-32. Where, as here, the district judge thrice reminded the jury *960 that only the evidence could be considered in reaching its verdict, our case law recognizes mitigation of the prejudice Mageno may have suffered from the improper statements.
D.
Lastly, there is no evidence in the record that the government’s misstatements were intentional. Though the “touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor,” Smith v. Phillips, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), we have repeatedly recognized that “[ajnyone can make a mistake,” so to “determin[e] the proper remedy” for prosecutorial misstatements, “we must consider the government’s willfulness in committing the misconduct and its willingness to own up to it.” Kojayan, 8 F.3d at 1318. Here, the government has been willing to own up to its arguable misconduct, pointing out the questionable statements to us and to Ma-geno in its appellate brief despite Mage-no’s complete failure to object at trial or raise the issue in her appellate briefs. This willingness, on the part of the government, to own up to its possible errors provides yet another reason that the statements did not affect Mageno’s substantial rights, meriting reversal of conviction.
Once more, the majority offers little in the face of our cases recognizing the importance of prosecutorial intent. Majority Op. at 947-48. From our law, the majority cites only our decision in United States v. Rangel-Guzman, 752 F.3d 1222, 1226 (9th Cir.2014), where we affirmed the appellant’s conviction because “there’s no reason to believe the jury would have accepted the version of events posited by [the appellant] ... at trial — even absent the prosecutor’s erroneous [statement]— [the appellant] has failed to demonstrate that the prosecutorial error in this case affected his substantial rights.” As I have stated, there is no reason to believe the jury would have accepted Mageno’s story that she did not know of the conspiracy given her close relationship with Burgos, and her continued association with him even after she indisputably knew he was dealing narcotics. The majority also cites a law review article that observes that courts “generally” apply an objective, rather than intent-based, approach to prosecu-torial misconduct. Bennett L. Gershman, Mental Culpability and Prosecutorial Misconduct, 26 Am. J.Cmm. L. 121 (1998). Not only is a fifteen-year-old academic survey of out-of-circuit case law and general perceptions of that law not binding upon us, the article actually concluded that there are several instances when a prosecutor’s mental state should be relevant and suggests that “[c]ourts ... explicitly identify a prosecutor’s mental culpability in determining whether the conduct was improper.” Id. at 164.
The majority implies that prosecutorial intent matters only when the government qualifies the misstatements. Majority Op. at 948-49, citing United States v. Carrillo, 16 F.3d 1046, 1050 (9th Cir.1994). But we have not recognized such a distinction. See, e.g., Jeffries v. Blodgett, 5 F.3d 1180, 1193 (9th Cir.1993) (“[w]e do not believe that the [error] rendered Jeffries’ trial fundamentally unfair. First, the statement was inadvertent and not a prosecuto-rial attempt to elicit otherwise inadmissible evidence”); Gage v. United States, 167 F.2d 122, 125-26 (9th Cir.1948) (“[i]nsofar as any inaccuracy existed in the prosecutor’s statement to the jury, it appears to have been unintentional,” which supported our conclusion that the “alleged error is not such as could have so seriously prejudiced the rights of appellant as to require *961 us to take notice of it in the absence of objection or assignment of error”).
As most of the government’s statements were based on reasonable inferences from Burgos’s testimony and the record, they were not erroneous. Gray, 876 F.2d at 1417. Mageno faced so much evidence in her trial that there is no “reasonable probability” that absent any government misstatements she would have been acquitted. Hein, 601 F.3d at 914. The district court repeatedly admonished the jury that the statements of the lawyers were not evidence, which further mitigated any prejudice Mageno may have suffered. Bracy, 67 F.3d at 1431. The record shows that the government made any misstatements inadvertently, and when it realized the errors, brought them to our attention. Kojayan, 8 F.3d at 1318. Thus, even if Mageno had not waived review of the prosecutorial statements, the statements did not affect the outcome of her trial and did not seriously affect the fairness of judicial proceedings, so there was no plain error and we should not reverse her conviction.
IV.
Finally, I disagree with the implications of the language the majority uses. The majority states that the “prosecutors’ statements during closing argument were improper,” Majority Op. at 944, implies that the prosecutors failed to “serve truth and justice first,” id. at 949, and states that it was the prosecutors who “created the problem” here. Id. at 949.[5] The majority also implicitly condemns the district court for not “expressly t[ying]” the instructions to the prosecutors’ misstatements. Id. at 944-45. But the truly negligent actor in Mageno’s trial, her attorney, is mentioned only in passing.
Although the majority does not explicitly point out Mageno’s attorney’s deficient performance, his errors are obvious even from the majority’s description of the record. Mageno’s defense “put[ ] its eggs ... in the ‘knowledge’ basket.” Id. at 946. Despite this theory of the case, her attorney failed to object when the government suggested and then unambiguously stated that Mageno knew why Burgos had been deported, which eviscerated the supposed defense strategy. Id. at 939. After he failed to object, he still maintained focus on Mageno’s knowledge in closing argument. Id. at 946. Shockingly, he then himself misstated Burgos’s testimony and, according to the majority, dramatically undermined his own theory of the case. Id. at 946. The majority assumes, without any record citation, that the government’s statements made him “launch[ ] a weak counterattack,” and “damaged the defense overall.” Id. Then he failed to object when the government clearly misstated the evidence by arguing that Burgos testified that Mageno knew why he had been deported. Id. at 947 (which is accurate in only one of the five statements).
What the majority overlooks in its description of the trial is that Mageno’s attorney never objected to the government’s allegedly harmful statements, and he did *962 not file a motion for a new trial. He did not appeal to this court on the basis of the government’s statements. Even after the government raised the potentially erroneous statements in its answering brief, he did not file a reply brief, as he was entitled to, to adopt the argument pointed out by the government. Finally, he did not raise these prosecutors’ statements at oral argument before this court. Only when a judge of this panel brought up the statements did Mageno’s attorney state that the judge raised a good argument. He did not adopt or specifically enunciate the legal argument.
The majority reminds us that “[p]rose-cutors have a special responsibility to provide ‘those accused of crime a fair trial.’ ” Majority Op. at 949, quoting Kojayan, 8 F.3d at 1323. But “[t]he government is not responsible for, and hence not able to prevent, attorney errors that will result in reversal of a conviction or sentence.” Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[6]
V.
The majority is simply wrong. We should not review the government’s statements from the closing arguments. Even if we did, we should only review one statement: that Burgos testified that Mageno knew he was deported because of his involvement in drag activity. The other statements about Mageno’s knowledge were fair inferences from the record. Moreover, even if all of the statements were improper, we still should not reverse because the result of the trial would have been the same without the statements. “Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.” Roger J. Traynor, The Riddle of Harmless Error 50 (1970). Additionally, I am concerned that the negligent actor most responsible for any mistakes at trial, Mageno’s own attorney, goes unnamed in the majority’s opinion.
On the actual basis of Mageno’s appeal, her argument that there was insufficient evidence of her involvement in the conspiracy, we should affirm, because a reasonable jury could conclude that Mageno knew that Burgos was dealing drugs and that her conduct facilitated that conspiracy. United States v. Nevils, 598 F.3d 1158, 1163-64 (9th Cir.2010) (en banc).
I dissent.

. Mageno’s lawyer was so indifferent to the argument, he did not even state the correct legal standard for our review of the government’s statements. Mageno did not object to the statements at trial, so we only reverse if the government's statements constituted 'plain error,” rather than if the statements were "harmless error.” Majority Op. at 940.

. The majority engages in a serious and impressive analysis of our theoretical power to correct plain errors not presented to us. Majority Op. at 941-43. But that power is dis-cretionaiy. United States v. Jeffery, 473 F.2d 268, 270 n. 2 (9th Cir.1973). Using that discretion, we have cabined our authority to review unraised plain errors under Silber and Rule 52(b) to the three circumstances described in Ullah. See United States v. Kama, 394 F.3d 1236, 1238 (9th Cir.2005) (holding that "we will not apply an exception [besides the three from Ullah] on our own accord”).
The majority recognizes that "circumstances such as these do not present themselves very often.” Majority Op. at 942-43 n. 8. The majority then suggests that such circumstances do arise in other circuits with some frequency. But those far-flung results do not trump our decisions in Kama and Ullah.
The only decision of ours that the majority cites, United States v. McKinney, 707 F.2d 381 (9th Cir.1983), is at odds not only with Kama but also with Rule 52(b) itself, because there we incorrectly reviewed whether the Confrontation Clause violation not objected to at trial was “harmless beyond a reasonable doubt,” id. at 384-85, rather than under the correct standard of whether the alleged error was “plain.” See Silber, 370 U.S. at 718, 82 S.Ct. 1287; United States v. Gomez, 725 F.3d 1121, 1129 (9th Cir.2013) (subjecting alleged violations of the Confrontation Clause not objected to at trial to plain error review); McKinney, 707 F.2d at 385 (Belloni, J., dissenting) (recognizing that the majority applied the incorrect legal standard). Thus, our application of the waiver rules in McKinney was wrongly decided at the time and is also inconsistent with our later precedent.

. The majority disputes the relevance of Jackson. Majority Op. at 945 n. 12. But it is actually the majority’s citation to Dixon v. Williams, 750 F.3d 1027 (9th Cir.2014) that is irrelevant. Here, Mageno had not submitted "considerable evidence" that she did not know why Burgos was deported. Id. at 1036. The only evidence submitted was that Mageno and Burgos were close, which supports the reasonable inference that Mageno knew why Burgos was deported. In such a case, we should presume that the jury followed that reasonable inference. Also, Dixon was decided under the "harmless,” rather than “plain," error standard. Id. at 1034-36.

. The government, in an abundance of caution, suggested in its brief that three of the other statements were improper. But the government also argued that "[t]he jury could have reasonably found that [Mageno] would have likely known the circumstances that surrounded [Burgos's] deportation," which would mean that only one of the statements was erroneous. See Gray, 876 F.2d at 1417. The majority latches on to the government’s suggestion that the three additional statements were improper, but fails to analyze the government’s later, and correct, argument that those three statements were proper. Majority Op. at 944 n. 11.

. The majority compares this appeal to our "recent case presenting a similar prosecutorial error [where] the government also came forward and acknowledged its error, but, unlike here, it did not do so until the en banc stage and after repeated questioning.” Majority Op. at 939-40 n. 4, discussing United States v. Maloney, No. 11-50311, 755 F.3d 1044, 2014 WL 801450 (9th Cir. Feb. 28, 2014) (en banc). The comparison is irrelevant and highly misleading: that case involved intentional and far more troubling prosecutorial misconduct by the government, by a different United States Attorneys’ Office, and the Assistant United States Attorneys in this case brought the potentially erroneous statements to our attention in their answering brief, not after questioning by the panel.

. The majority and I have a factual disagreement over whether Mageno’s attorney "introduced” the error, based on our disagreement about whether the government's first three statements were improper. Majority Op. at 946-47 n. 14. But the majority does not, and cannot, question the other serious errors performed by Mageno's counsel independent of his own erroneous statements, including his failure to object to the government’s statements, his failure to file a motion for a new trial, his failure to appeal the statements to this court, his failure to file a reply brief, and his failure to prepare to discuss the statements at oral argument.
Regardless of Mageno's counsel’s performance, I would not reverse Mageno's conviction, because "the result of the proceeding would [not] have been different” in the absence of his errors. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Mageno did not suffer sufficient prejudice that we could determine she would have been acquitted absent the prosecutorial statements, and thus did not suffer prejudice from her counsel's deficient performance. It is the majority that should agree with me, by “hold[ing] Mageno’s attorney's feet to the fire,” given its own recitation of the litany of his errors and its conclusion that Mageno was prejudiced.